*Hartford,*
June, 1851.

Camp
*v.*
Grant.

## Camp *against* Grant and others, administrators of the estate of *Zelotes C. Grant*, deceased.

The debts of a partnership are in equity joint and several; and a person
having a debt against a partnership, may, on the death of one of the
partners, come immediately against the estate of that partner, and have
his claim allowed, by the commissioners, *pari passu* with private claims,
though the surviving partner be solvent and within the jurisdiction of our
courts. [One judge dissenting.]

A court of probate, in decreeing distribution of the effects of an insolvent
estate, takes the claims as found by the commissioners, without including
interest which accrued between the rendering of the report and the pass-
ing of the decree.

THIS was an appeal from a decree of the court of probate
for the district of *Bristol*, ordering payment of the claims of
creditors allowed against the estate of *Zelotes C. Grant*,
deceased.

The following are the facts in the case, agreed to by the
parties. The firm of *Z. C. & C. S. Grant*, consisted of
*Zelotes C. Grant*, the deceased, and *C. S. Grant*, his broth-
er. *Z. C. Grant* died in *November*, 1846 ; and *C. S. Grant*,
shortly after. At the death of the former, there was part-
nership property of the value of 700 dollars, which came

Camp
v.
Grant.

into the hands of *C. S. Grant*, as surviving partner. Soon after the death of *Z. C. Grant, Bennet, Bulkley & Clark*, creditors of the partnership, attached all the partnership property in the hands of *C. S. Grant*, on a claim much larger than the value of such property, and afterwards presented their claim before the commissioners on *Z. C. Grant's* estate, and had it allowed in full. They afterwards obtained judgment in their suit against *C. S. Grant*, as surviving partner, and on the execution issued thereon, sold all the partnership property, which was not sufficient to pay the execution in full. There was no other partnership of *Z. C. & C. S. Grant* than that above mentioned. The sale of the partnership property on the execution, was after the allowance by the commissioners, of their claim on *Z. C. Grant's* estate, but long before the passing of the decree appealed from. *C. S. Grant*, at the time of the death of *Z. C. Grant*, and long before, was individually insolvent, having no private property of any kind ; and executions issued against him, during that time, were returned *nulla bona ;* but he had never been subjected to any process of bankruptcy. He died more than two years before the passing of said decree, and after the appointment of the commissioners.

The firm of *Jerome & Grant* consisted of *Noble Jerome* and *Z. C. Grant*. *Jerome* is still living.

In the decree of the court of probate the following facts were found. The estate of *Z. C. Grant* was represented insolvent ; and it appeared from the inventory returned, that all his estate embraced therein was his separate property. From the report of the commissioners, it appeared, that the amount of separate claims against his estate, found due and allowed, (except last sickness and funeral expenses,) was 6,478 dollars, 44 cents. There was also an additional claim of 2,248 dollars, 86 cents, allowed by the commissioners, as a separate contingent liability, arising out of the indorsement of certain promissory notes by *Z. C. Grant*, for which, by the failure of the maker to pay them, at their maturity, and by due notice of their dishonour, the estate of *Z. C. Grant* had become liable. It appeared also from the report of the commissioners, that the sum of 2,229 dollars, 44 cents, was justly due from the late company of *Z. C. & C. S. Grant*. From the same report, it further appeared, that

there was justly due from the late company of *Jerome & Grant* the sum of 344 dollars, 16 cents. From the administration account, accepted by the court of probate, it appeared, that the separate claim of the *Bristol Manufacturing Company*, allowed by the commissioners, amounting to the sum of 2,187 dollars, 67 cents, being secured by a lien on the stock of that company, belonging to the estate of *Z. C. Grant*, had been paid in full, by the administrators, thereby reducing the amount of separate claims against his estate to 4,290 dollars, 77 cents. The total liabilities of that estate, (exclusive of some interest,) from separate and partnership claims, amounted to 8,463 dollars, 8 cents. There had also been paid to *Bennet, Bulkley & Clark*, creditors of *Z. C. & C. S. Grant*, from property other than that inventoried as the estate of *Z. C. Grant*, the sum of 650 dollars, 15 cents, reducing the amount found due from the company of *Z. C. & C. S. Grant*, to 1,579 dollars, 29 cents. After deducting all losses and paying the funeral charges, last sickness expenses, and the expenses incurred in the settlement of the estate, including an allowance for the widow's support, there remained in the hands of the administrators 5,530 dollars, 65 cents.

The court of probate thereupon ordered, that the administrators on the estate of *Z. C. Grant* pay to all the creditors, including both the separate and partnership creditors, (except *Bennett, Bulkley & Clark*, to whom was to be paid a proportional dividend on the balance due to them, and except the separate claim of the *Bristol Manufacturing Company*, which, having been secured by lien, had been paid in full, except also the last sickness expenses and other privileged claims, which had been paid in full,) the sum of 65 cents and 3 mills on the dollar; and this being done, the estate would be settled.

From this decree *Hiram Camp*, one of the separate creditors of the estate, appealed, assigning the following reasons :

First, that by the decree, the separate property of the deceased in the hands of the administrators, is to be divided equally, in proportion to their several claims, among the separate creditors of the deceased and the partnership creditors of *Z. C. & C. S. Grant* and *Jerome & Grant*, notwithstanding the separate property is not sufficient to pay in full

*Hartford, June, 1851.*

Camp
*v.*
Grant.

the separate creditors; whereas the court should have order-ed the separate creditors to be first paid out of the separate property, and the balance (should there be any) to be divided among the partnership creditors; that in thus placing the separate and partnership creditors upon an equality, with reference to the separate estate, the court mistook the law:

Secondly, that the report of the commissioners was made to the court of probate on the 5th day of *September*, 1847, and the administrators have since, at different times, paid out of the separate property to some of the creditors in full, to some in part, and to others not any thing; it was therefore the duty of the court of probate, in making an order of distribution, that there might be no inequality among those entitled to dividends, to have computed the interest on said claims from the time of rendering the commissioners' report to the passing of the order, and to have ordered a dividend on the amounts then due, including both principal and interest; whereas the court of probate ordered to be paid a dividend only upon the sums due to the creditors of the estate, on the 5th day of *September*, 1847.

The questions of law arising in the case were reserved for the advice of this court.

*Dutton* and *C. Ives*, for the appellant, contended, 1. That in this case the separate creditors should be first paid out of the separate estate of the deceased, before the partnership creditors were allowed to share therein. In support of this position they urged the following considerations.

First, upon the death of a member of a partnership, the partnership is dissolved, and, *at law*, all its creditors must look exclusively to the surviving partners for the satisfaction of their several claims. *Pendleton* v. *Phelps*, 4 *Day*, 481. *Sturges* v. *Beach*, 1 *Conn. R.* 509. *Alsop* v. *Mather*, 8 *Conn. R.* 587. *Filley* v. *Phelps*, 18 *Conn. R.* 294. 300, & seq.

Secondly, courts of equity, however, *in case there is no solvent surviving partner*, will permit the partnership creditors to satisfy their claims out of the separate estate of the deceased, subject to the limitations and restrictions of other well settled equitable principles. See the cases cited above.

Thirdly, in this case, it is not claimed, that *Jerome*, the surviving partner of the firm of *Jerome & Grant*, ever has

been insolvent since his partner's decease; therefore, the court of probate, sitting as a court of *equity*, could not legally decree, that the partnership creditors of *Jerome &amp; Grant* should share equally with the separate creditors of *Z. C. Grant* in the distribution of his separate estate.

Fourthly, there is no admissible evidence that upon the death of *Z. C. Grant*, or afterwards, his surviving partner in the firm of *Z. C. &amp; C. S. Grant*, was insolvent. This fact, if of any importance, is a material fact, which the commissioners alone had power to find; and they not having found it, and no steps having been taken to amend or set aside their report, it is not made to appear, and the law raises a presumption in favour of solvency and life. *Hotchkiss* v. *Beach*, 10 *Conn. R.* 232.

But fifthly, if the fact of *C. S. Grant's* insolvency is established, it is of no avail; for it is well settled, by courts of equity, in *Great-Britain* and this country, that in the distribution of partnership effects, partnership creditors are preferred; and a like preference is given to separate creditors in the distribution of separate estate. *Murrill* v. *Neill*, 8 *Howard*, 414. *McCulloch* v. *Dashiell's* admr. 1 *Harris &amp; Gill*, 96. *Robins* v. *Robins*, 7 *Barb. Law &amp; Eq. R.* 378. 1 *Sand. Ch. R.* 348. *Wilder* v. *Keeler*, 3 *Paige*, 168. *Payne* v. *Mathews*, 6 *Paige*, 20. 3 *Kent's Com.* 65. &amp; n. (6th ed.) *Allen* v. *Wells*, 22 *Pick.* 450. 454.

Sixthly, to this general rule there are some eccentric exceptions in *Great-Britain;* and it is there held, that if there are absolutely *no* joint effects even of the smallest amount, or no solvent partner, or no separate debts, the joint creditors shall share the separate estate equally with the separate creditors. So too, where in bankruptcy, the petitioning creditor is a joint creditor, the commission being considered in the nature of an execution. And the joint creditors can take the separate estate, upon paying the separate creditors in full. The two first exceptions are the only ones affecting this case. They have no foundation in reason, and rest solely upon the authority of precedent. They have been wisely repudiated, by the courts of this country.

Seventhly, the decree in this case is wrong, even under the *English* rule; for at the time of the decease of *Z. C. Grant*, there was *some* partnership property belonging to the

partnership of *Z. C. & C. S. Grant*, in the hands of the surviving partner; and in the case of the partnership of *Jerome & Grant*, the surviving partner was not insolvent.

Eighthly, the separate creditors having contributed to the separate estate, and this estate not having been augmented, by the partnership creditors, strict equity requires, that the claims of the former should be first satisfied out of the estate which they alone created.

Ninthly, the courts of *Connecticut* having given the partnership creditors the preference in the distribution of partnership property, and thus adopted one branch of the rule of distribution recognised in other equity jurisdictions, consistency would seem to require, that the other branch of the rule should not be repudiated.

Tenthly, the assets in this case are legal, and not equitable; the claims of the separate creditors are legal claims, while those of the joint creditors are only equitable; and it is a well settled principle, that where the equities are equal, the *legal rights* must prevail. *Wilder* v. *Keeler,* 3 *Paige,* 172.

Eleventhly, it is begging the question to say, that the separate creditor gave credit to the individual alone, while the copartnership creditor trusted equally the partnership and each member thereof. As a practical fact, it is not true; and theoretically, as every man is supposed to know the law, the creditor of a copartnership, when he gives credit, knows that he bases his claim at law upon the separate estate of a partner, the moment that partner dies; and he knows, that he bases it also in equity, when the partner dies, leaving only sufficient separate estate to pay his separate creditors.

Twelfthly, partnership debts are only in a limited and qualified sense, joint and several. The individual members cannot be sued alone for a partnership debt; and in case of the death of a partner, the partnership debt survives to the survivors.

Thirteenthly, the statute directs the payment of "all debts, as allowed, in proportion to their respective amounts." *Stat.* 361. § 61. This is almost identical with the language used directing the distribution of assigned estates. *Id.* 366. § 78. In the distribution of assigned partnership estate, the joint creditors have always been preferred, although sepa-

rate claims have been proved and allowed. A similar con-
struction of the statute, in the first case, will give the sepa-
rate creditors the preference in the distribution of separate
estate.

2. That interest should be computed down to the time of
the last official act, which, in the case of an insolvent estate,
is not the report of the commissioners, but the decree of
distribution. *Williams'* admr. v. *American Bank, 4 Metc.*
317. 324, 5.

*Hooker*, for the appellees, introduced his argument with
some preliminary remarks, to the following effect. The
rule in equity was formerly as claimed by the appellants, and
is still upheld, by some modern adjudications. But it was a
rule, not of general equity, but of *convenience* merely, and
a rule in bankruptcy only. Moreover, it has been greatly
shaken at times. It never was founded in reason. The
only reason ever given for it is, that joint credit is given to
joint property. This is simply " artificial reason ;" being
utterly untrue in fact. Every man who trusts a partnership,
looks to the private estates of the partners. He gives credit to
private property, because he knows he can attach private
property for his debt. Partnership property and credit make
private property.

He then contended, 1. That partnership debts are now
regarded in equity as joint and several. It was formerly
held, that estates of deceased partners could not be pro-
ceeded against at all, primarily, upon partnership claims, but
that such claims could be enforced against such estate only
through the equities subsisting between the partners. This
principle is now entirely repudiated. It rested upon the old
principle with regard to the joint character of partnership
debts, and fell with it. It was afterwards for a long time
held, that the right to proceed primarily against the deceased
partner's estate, was limited to the case of insolvency of the
surviving partner ; but as the principle became more fully
settled and acknowledged that partnership debts were joint
and several, this distinction fell before it, and the broad prin-
ciple has become established, that the partnership creditor
may resort at once to the estate of the deceased partner,
whether the survivor be insolvent or not. If the deceased

partner's estate pays more than his share of the partnership debts, his administrator has a claim on the other partner to that amount, so that the estate is made good. Thus the rule works no injustice. We shall find the ablest elementary writers declaring, and that the old rule, absurd in its origin, shaken in all its principles, is upheld only by the maxim of *stare decisis.* 1 *Sto. Eq. Jur.* § 676. and notes. *Coll. Part.* 68 to 76. 337 to 347. *Devaynes* v. *Noble,* 1 *Meriv.* 529. S. C. 2 *Russ. & Mylne,* 495. *Wilkinson* v. *Henderson,* 1 *Mylne & Keene,* 582. *Hamersley* v. *Lambert* & al. 2 *Johns. Ch. R.* 508.

2. That while it is a rule both of law and equity, that partnership claims shall be paid in full out of partnership property, before private debts can be paid from that fund, yet this fact does not furnish a reason for the converse rule, that private debts shall first be paid in full out of the private estate, to the exclusion of the partnership debts : for private property is always attachable for partnership debts, while partnership property is not for private. The entire property, both joint and private of partners, is thus liable for partnership debts, and as such becomes the basis of partnership credit. And there is no good reason why the intervention of bankruptcy or of death, should introduce a new rule of liability. To such an extent is this rule applied, that where a partnership creditor attaches private property, and a private creditor afterwards attaches the same property, the partnership creditor retains his lien, although his claims may exhaust the property. Here the conflict is direct. *Allen* v. *Wells,* 22 *Pick.* 450. And the same point would undoubtedly be so decided in this state.

3. That it follows, that if partnership debts are joint and several, they should be treated, as against the private estate of a partner, in all respects, as the private debts, and should be paid *pari passu* with them from the private estate. 1 *Sto. Eq. Jur.* § 676. note. *Coll. Part.* § 584.

The exceptions to the general rule are some of them such as to show a departure from the rule, and that the rule itself would have been abandoned with more consistency, *viz.* 1. Where the joint creditor is a petitioner for a separate commission against the bankrupt partner. 2. Where there is no joint estate, and no living solvent partner. Neither of these

exceptions can be sustained but upon the principle that the partnership debts are several ; and that principle should have led, not to the partial, but to the entire abandonment of the rule. See *Story on Partn.* §§ 378. 380.

4. That the rule claimed by the appellant, has never been well established ; has often been called in question, by the best judges ; has always been unsatisfactory to the legal profession ; and by many decisions of high authority, both antient and modern, has been wholly repudiated. *Allen* v. *Wells,* 22 *Pick.* 452, 3, 4. Lord *Thurlow* expressed his decided opinion, that the rule as claimed by the appellees, was the best, and sustained it in the following cases : ex parte *Hayden,* 1 *Bro. C. C.* 454. Ex parte *Copland,* 1 *Cox,* 420. Ex parte *Hodgson,* 2 *Bro. C. C.* 5. Ex parte *Page, Id.* 119. Ex parte *Flintum, Id.* 120. Lord *Rosslyn* acted, for some time, upon the practice established by Lord *Thurlow,* but afterwards restored the rule adopted by Lord *Hardwicke.* Lord *Eldon,* in speaking of Lord *Thurlow's* opinion, (17 *Ves.* 207.,) says, "This subject took a different course at different periods, until the time of Lord *Thurlow,* who considered it with great anxiety, and having consulted most of the judges, expressed his decided opinion, that the contrary course was best." See *Sto. Part.* § 379. n. *Eden Bank.* 169. *Coop. Bank, L.* 293, 4. 300, 1. 1 *Ashmead* 347. *Charl. R.* 77. 2 *Ves.* 120.

The rule claimed by the appellant, is every where spoken of as a rule of *mere convenience,* and not of general equity, and adopted in *bankruptcy.* It by no means follows, that if the rule is well established in bankruptcy, it will be imported into our equity system, and become the general rule of administration in cases of conflict between joint and separate creditors.

As an evidence that eminent jurists regard the rule as claimed by us to be the more equitable, we would advert to the fact, that it is established, by the modern code of commerce of *France.* That code (*art.* 534.) provides, that the creditor holding a joint and several obligation of the insolvent, and other persons who are also insolvent, shall participate in the dividends of all their respective estates, until he shall be fully paid. *Story on Partn.* § 363. note.

5. That if such a rule exists, it does not apply to a case

where there is no joint estate, and no living solvent partner. *Sto. Partn.* § 380.   8 *Law Reporter* 171.   *Eden Bank.* 172. In this case, it is agreed, that *C. S. Grant,* the surviving partner of *Z. C. & C. S. Grant,* died shortly after *Z. C. Grant,* and more than two years before the decree appealed from was made ; that he was, at the time of his death, and of *Z. C. Grant's* death, wholly insolvent, having no private property of any kind, and executions issued against him were returned *nulla bona,* but he had never been subjected to any process of bankruptcy ; that there was no partnership property of any kind, except about 700 dollars which came into the hands of *C. S. Grant,* as surviving partner, and was immediately after attached, by *Bennett, Bulkley & Clark,* on a partnership claim, and was afterwards, during the life of *C. S. Grant,* sold on their execution, and in part payment thereof.   Whatever may be held with regard to the liabilities of *Jerome & Grant,* said *Jerome* being still living, and not found to be insolvent, yet we claim, that the case of the creditors of *Z. C. & C. S. Grant* comes within the above exception.

First, there was *no partnership property.*   There was none at all, at the time of making the decree, although it was in existence at the time of *Z. C. Grant's* death, and for a short time after.   The former date, rather than the latter, should determine the rights of the parties.   The question is, what did equity *then* require ?   Was there *then* any partnership property the existence of which affected the rights of the parties ?   Besides, during the whole of the time that the estate of *Z. C. Grant* was in settlement, the partnership property was under incumbrance, to the amount of more than its value.   The fact that it was not attached, until after *Z. C. Grant's* death, cannot affect the case.   It was under incumbrance, and withdrawn from the reach of the creditors of the partnership, during all the time that *Z. C. Grant's* estate was in settlement.   *Sto. Partn.* § 380.   It must be "an available joint fund, and not purely a desperate and nominal joint fund."   *Eden Bank.* 172, 3.

Secondly, there was *no living solvent partner.   C. S. Grant* died more than two years before the passing of the decree, although after the death of *Z. C. Grant.*   The time of passing the decree, rather than that of *Z. C. Grant's*

death, is the date that fixes the rights of the parties. But if otherwise, *C. S. Grant*, at the time of *Z. C. Grant's death*, and ever after, was insolvent.

6. That if there is any such rule in the case of bankruptcy, it does not apply to the case of a deceased insolvent's estate. *Sparhawk*, exr. v. *Russell*, 10 *Metc.* 305. 1 *Bos. & Pul.* 547, 8. 5 *Serg. & R.* 87.

7. That the *Statute* provides for the payment of all claims against a deceased person, whether partnership or private, out of his private property, and with no preference of the latter over the former. *Stat.* 361. § 61. Claims shall be paid in the following order : 1. Funeral expenses and charges of settling the estate. 2. Debts due for last sickness. 3. Taxes and debts due the state. 4. "*All other claims,* as allowed, *in proportion to their respective amounts.*" The statute gives no power to commissioners to make any other classification than as above. See *p.* 36. §§ 55. 56. And the judge of probate has no power to classify and apportion to different funds &c. *Hotchkiss* v. *Beach*, admr. 10 *Conn. R.* 232. 2 *Conn. R.* 354. 7 *Smedes & Marsh.* 280.

8. That it has long been a *settled practice* in this state, in the administration of assets, to allow partnership creditors to receive dividends from the private estate of a deceased insolvent, *pro rata* with separate creditors.

9. That as the rule has never been judicially settled in this state, and as that claimed by the appellant rests (in the words of judge *Story*,) "on a foundation as questionable and as unsatisfactory as any rule in the whole system of jurisprudence," this is a favourable opportunity to establish a *just* and *equitable* one.

That as to the second reason of appeal, we say : First, that the creditors were entitled to nothing but their dividend on the amount found due by the commissioners ; and if the administrator paid any of them before-hand, either in whole or in part, he did it wholly on his own risk, and with no damage to the other creditors.

Secondly, if the circumstances were such that the administrator, during the long delay in settling the estate, ought to have paid interest on the funds in his hands, then the remedy is in the settlement of his administration account, and not in the decree of distribution. If he ought not to pay

interest, then it makes no difference to the creditors gener-
ally, whether the funds lie idle in his hands, or are advanced
at his own risk to some of the creditors.

Thirdly, the addition of interest on all the claims down
to the time of distribution, while it would have increased
the aggregate of the debts, would not have increased the
proportion of any one debt to the others, and would not
have added anything to the dividend of any creditor.

ELLSWORTH, J.   We think the decree of the court of
probate appealed from, is correct and should not be reversed.

The facts which are agreed and recited by counsel, need
not be particularly recapitulated.   It appears, that *Zelotes
C. Grant*, in the settlement of whose estate the question
arises, was, at the time of his death, in *November*, 1846, in
partnership with his brother, *C. S. Grant*, under the name
of *Z. C. & C. S. Grant*; and that *C. S. Grant* survived his
brother but a short time : that he was likewise in partner-
ship with one *Jerome*, under the name of *Jerome & Grant;*
and that *Jerome* still survives : that *Z. C. Grant* owed, at
the time of his death, some 10,000 dollars of private debts ;
the company of *Z. C. & C. S. Grant*, some 2,500 dollars ;
and *Jerome & Grant*, some 350 dollars ; that *Z. C. Grant's*
estate was represented insolvent, commissioners were ap-
pointed, and they gave notice, according to law, for the pre-
sentation of claims : that upon examination, they found due,
and reported to the court of probate, certain private debts
against *Z. C. Grant*, and partnership debts against *Z. C. &
C. S. Grant*, of 2,229 dollars, 44 cents, and against *Jerome &
Grant* 344 dollars, 16 cents : that the judge of probate
ordered the assets of *Z. C. Grant* (being sufficient to pay
only 65 cents and 3 mills on the dollar) to be distributed,
*pro rata*, among the private and partnership creditors.   The
appellant, a private creditor of *Z. C. Grant*, complains of
this decree of the court of probate, for the reason that com-
pany creditors are allowed to come in *pari passu* with the
private creditors of *Z. C. Grant*.   He makes this important
question to us—Whether, according to law, the estate of a
deceased partner is liable to be called upon to pay the debts
of the partnership, while there is a surviving partner, who is
not shown to be insolvent.   We think this question does not

necessarily arise in this case, as to the debts due from *Z. C. & C. S. Grant*, as will be particularly stated in the sequel, but only as to the debts due from *Jerome & Grant.* So far, perhaps, the objection urged by the appellant will lie ; and therefore, it becomes necessary for the court, in order to meet the whole case, to examine and decide the general question. This we are more willing to do, because the question is one of great practical importance and of frequent occurrence, much discussed and variously decided elsewhere, but has not received adjudication in our courts.

The estate of *Z. C. Grant* having been represented insolvent, commissioners appointed and notice given to bring in claims, it was necessary, that within the time appointed by the court, which can never exceed eighteen months, every claim upon the estate should, if ever, be presented to the commissioners for an allowance ; and any claim not so presented, can never afterwards be paid, except only out of some newly discovered estate. The door is, therefore, absolutely closed against any and all claimants. All the estate in the executors' hands, is, by order of the court, distributed among the creditors, as soon after the expiration of the time limited and the return of the commissioners' report, as is found consistent and practicable.

It is then of vital importance to settle correctly what is intended by the word "*claims*" in the fifty-fifth section of the statute regulating the settlement of estates. This section provides, that the creditors shall exhibit their claims to the commissioners for allowance ; and then the sixty-first section declares, that the payment of claims presented and allowed against the estate, shall, after deducting the expenses of the last sickness and the funeral expenses, the taxes, and debts due the state, besides what is set to the widow, be paid, *in proportion to their respective amounts.*

We think a debt due from a company or partnership, though a member of the partnership is surviving, is a debt or claim against the estate of the deceased partner, which may be presented to, and be allowed by, the commissioners ; because, first, it is within the fair and just construction of the language and the object of the statute ; secondly, because a partnership debt is several as well as joint ; and thirdly, as to most of the debts in question, it is proved there are no means for payment, but the assets of *Z. C. Grant.*

*Hartford,*
June, 1851.
———————
Camp
*v.*
Grant.

First, then, as to the statute. The intention of the legislature, as the statute shows, is to have an insolvent estate fully and finally settled and the avails apportioned among the creditors, at an early day ; and that no creditor shall participate in these avails, who did not present his claim within the time allowed. What now, we ask, shall a creditor having a claim against the partnership do with it, in order to secure its payment? Is he driven to commence a suit, at once, against the surviving partner, because he is, or may be, supposed to be solvent? And if he is in fact solvent, he may, before judgment is obtained against him, become insolvent : so he may abscond from the country, or he may have no property that can be taken in execution, and in the mean time, the limitation of presenting claims against the estate of the deceased partner takes effect, and the creditor becomes hopelessly remediless. The surviving partner, too, has a deep interest in the presentation of claims to the commissioners. How else will *he* be safe, if the partnership shall, in the end, turn out to be indebted to him? He, no more than these creditors of the partnership, can come in afterwards for a share of the estate. Why then is not this a claim and a debt, within the proper meaning and necessities of the statute? Claims much more uncertain and contingent, if indeed there be here any uncertainty, are presented and allowed by commissioners, every day ; and this must be so, or they would be entirely lost. Among the claims reported by these very commissioners, is an indorsement of a note for 2,248 dollars, 86 cents, which was contingent, when reported, but became certain, afterwards. The company had indorsed a note which was not then due, but it was afterwards dishonoured by the maker, and the indorsers were compelled to take it up. Thus they obtained payment of their debt in the same proportion with others, which would not have been done, had they not presented the indorsement to the commissioners within the time allowed by law. In the case on trial, the claim was presented and allowed in the same way as contingently just and true. When, we enquire, did this debt cease to be a claim against both and each of the original debtors? It was so, before the death of *Z. C. Grant.* Did his death extinguish the debt, or discharge his estate? His death might extinguish the legal remedy

on the joint undertaking ; but how could it affect the claim, the real indebtedness itself ? Is not the debt due from both debtors as before ? It may be true, that a certain specific remedy is gone, and that, as betwen the partners, the surviving partner owes the whole debt, and must, in the end, pay it. But what has the creditor to do with this question ? It may be so, and it may not be so. Besides, credit may have been given wholly to *Z. C. Grant.* His estate is his representative ; and as he was *himself* liable, his estate ought to continue to be so. Certain it is, the debt could have been collected out of his separate estate, while in life. Why not, then, after his death ? Nothing but a *form* lies in the way ; and this cannot be urged against a simple presentation to commissioners.

In the states of *Massachusetts* and *Mississippi*, where there are statutes similar to our own, their courts have taken a similar view of this subject with ourselves. They place their decisions, as we do, upon the language and intent of their statutes ; and they cut loose from the conflicting decisions and unsatisfactory distinctions, which are to be found in the *English* books. *Sparhawk* v. *Russell*, 10 *Metc.* 305. 307. 7 *Smedes & Marsh.* 280.

We come to the second reason already mentioned, to wit, partnership debts are several, as well as joint. We do not say, that this is true of all joint liabilities, such for instance, as the liability of a principal and his surety ; but it is true of partnership debts, and of all debts where the persons indebted were the original debtors, all of them recipients of the consideration received. This will appear to be the good sense and reason of the thing, if we will, for a moment, lay aside the difficulties which arise from looking at the established forms of redress in courts of law and equity, and which will be particularly noticed in the sequel.

If two or more persons borrow money, or take up goods, on credit and their joint undertaking, does not each one owe the lender of the money, or the vendor of the goods, the whole sum due ? And as much so, as if he had acted alone, in the transaction ? While the debtors were living, could not the creditor levy his execution upon the property of either one of them ? And so, if one is discharged by bankruptcy, does not the other remain liable as before ? Even if

one of the debtors be sued alone, he can only object in abatement of the action, which goes simply to the form of the suit, and not to the indebtedness itself. If he does not object in abatement, the proof of a joint debt is proof of his individual indebtedness to the whole amount. And so now, by statute, when the declaration sets out a joint indebtedness, proof of the indebtedness of one is sufficient to subject him, without the other. Now, none of this would be proper or just, if a partnership debt is not considered to be several, as well as joint; if each did not owe the whole, as if he were alone.

The reason they cannot be sued severally, as well as jointly, where the security is only in form joint, is, that as both debtors were at first liable jointly, the form of the judgment, which either may have to pay, shall continue to shew the same joint indebtedness. And this is because the joint debtors are particularly interested in the mode and form of legal proceedings in the case; and because one suit at law ought to determine, finally, and among all concerned, every mere joint liability and controversy. So we understand are the authorities. *Story*, in his *Eq. Jur. vol.* 1. *sec.* 162, 3. says: "It seems now well established, as a general principle, that every contract for a joint loan is, in equity, to be deemed, as to the parties borrowing, a joint and several contract, whether the transaction be of a mercantile character, or not; for in every such case, it may fairly be presumed to be the intention of the parties, that the creditor should have the several, as well as the joint, security of all the borrowers for the repayment of the debt." And he further says, "the creditors may at once proceed against the assets of a deceased joint debtor, though there be a surviving debtor, just as if the form of the security had been joint and several." Sir *John Leach*, master of the rolls, said, in *Wilkinson* v. *Henderson*, 1 *Myl. & Keene*, 582–3: "All the authorities establish, that in the consideration of a court of equity, a partnership debt is several, as well as joint." *Story*, in his late treatise on *Partnership*, § 362. says, the doctrine formerly held on this subject, seems to have been, that the joint creditors had no claim whatever in equity against the estate of the deceased partner, except when the surviving partners were, at the time, or subsequently became, insolvent or bank-

rupt. But that doctrine has since been overturned, and it
is now held, that in equity all partnership debts are to be deemed joint and several. Sir *William Grant*, in *Devaynes* v. *Nobles*, 1 *Meriv.* 529. 564. says : "I apprehend, by the general merchantile law, a partnership contract is several, as well as joint." Mr. *Collyer*, in his treatise on *Partnership, p.* 580. says : "It is now established beyond controversy, that in the consideration of courts of equity, a partnership debt is several, as well as joint." The same is held by Chancellor *Kent*, in *Hamersley* v. *Lambert*, 2 *Johns. Ch. R·* 511. Like views are expressed in many cases, and in some, are authoritatively decided. *Sumner* v. *Powell*, 2 *Russ. &· Mylne*, 495. 2 *Meriv.* 37. *Devaynes* v. *Nobles*, 1 *Meriv.* 589. *Collyer* on *Part. b.* 3. *c.* 3. § 4. *Wilkinson* v. *Henderson*, 1 *Mylne &· Keene*, 582. *Throop* v. *Jackson*, 2 *Younge &· Coll.* 553. *Gow*, 358, 9. 3 *Kent's Com.* 64. (4th ed.) *Hamersley* v. *Lambert*, 2 *Johns. Ch. R.* 508. *Belknap* v. *Abbot*, 11 *Ohio R.* 411.

The remaining reason for sustaining the decree, to the extent of the 2,229 dollars, 44 cents, due from *Z. C. &· C. S. Grant*, is, that the surviving partner became insolvent, and there was no company property remaining to pay the debt.

The facts are these. *C. S. Grant*, the surviving partner, died, soon after his brother, *Z. C. Grant*, but some time before the decree complained of, was made. *C. S. Grant* was, individually, insolvent at, and so continued to be after, the death of his brother, until his own death, having no property whatever, except for a short time, after his brother's death, and partnership property, to the amount of 700 dollars, which was under an attachment by *Bennett, Buckley &· Clark*, creditors of *Z. C. &· C. S. Grant*, to a larger amount than its entire value. They attached the property before the commissioners met to allow claims. The commissioners allowed the claim, and after this, judgment and execution were obtained against the surviving partner, as was necessary, and the property was all sold, and the avails applied to extinguish the debt, as far as they would go.

Thus it appears, that at the time when the court of probate decreed the assets of *Z. C. Grant* to be distributed among the creditors of *Z. C. &· C. S. Grant*, and *C. S. Grant*, the surviving partner, had died insolvent, leaving no

property of any kind, to pay the debts of the company.   Of course, upon the admitted principle in courts of equity, that if the surviving partner is insolvent, the estate of the deceased partner may be proceeded against, this debt of 2,229 dollars, 44 cents, must be paid out of this estate.

The only answer urged to this view, is, that this was not the state of things, at the death of *Z. C. Grant*, as there was 700 dollars worth of company property on hand.   But we think this makes no difference.   We take the state of things at the time the court was called upon to decree what distribution of the funds should be made.   The line of duty marked out by those facts, is to be pursued by the court.   Had the fund, at that time, been subject to an order of a court of equity, as it was to an order of a court of probate, the court would have held the liability of *Z. C. Grant's* estate to pay the joint debts, to be complete and absolute.   The court of probate must do the same.

There is a debt due from *Jerome & Grant* of 344 dollars, 16 cents, which stands perhaps on a ground somewhat different.   *Jerome* is still living ; and it does not appear but that he is entirely solvent.   It does not, it is true, appear, that he is certainly solvent, or that he is within the limits of the state ; but it is claimed, that in the absence of proof to the contrary, these things will be presumed.   Let it be so.   Then we have presented the grave question, so learnedly and elaborately discussed at the bar.   Can the estate of a deceased partner be proceeded against for the payment of company debts, when there is a surviving partner, who is of sufficient ability to pay them ?

We suppose, that since the decision in *Ex parte Elton*, 3 *Ves.* 241., this question has been settled in the negative, in *England ;* not however as a general rule of equity, but as a rule of *convenience* in administering the law of bankruptcy.   The history of the rule shews, that it has never met with favour in *England*, as a rule of justice and equity.   It originated in the peculiar modes of proceedings under joint and several commissions in bankruptcy.   Lord *Hardwicke* first laid down the rule in the negative.   Lord *Thurlow* thought it so unjust, that he would not follow it, and laid down the rule to the contrary.   Lord *Loughborough* restored Lord *Hardwicke's* rule ; and Lord *Eldon* followed in the same

track, while he was Lord Chancellor. The language of *Hartford,* Lord Chancellor *Rosslyn* is: This subject took a different June, 1851. course at different periods, until the time of Lord *Thurlow,* who considered it with great anxiety, and having consulted *Camp v. Grant* most of the judges, expressed his decided opinion, that the contrary course was the best, as being the most legal, and therefore held, that the joint creditors should be admitted to prove and take dividends under a separate commission. He considered a commission of bankruptcy to be an *execution* for all the creditors; and as separate property could be taken on an execution against the partners, so it could be taken under such a commission. Lord *Loughborough* held this rule would be *inconvenient* in practice, and restored the more antient rule of Lord *Hardwicke.* See ex parte *Elton,* 3 *Ves.* 238.

So far as any principle of general equity is deducible from what is stated by the learned chancellors, as influencing them to adhere to the antient rule, it is, that as the separate creditors of one partner are postponed, in the distribution of partnership property, to the joint creditors, so the converse should be true—joint creditors shall be postponed to the private creditors of the partners, in the distribution of separate property. But there is an obvious difference between the two cases. Neither partner is permitted to appropriate to his own use company property; nor is the creditor of either partner permitted to take, on execution, company property, to pay his private debts, while there is not enough to pay the company debts. The partner individually owns only what is left to him after paying the company debts and liabilities; and now, at law even, after much discussion and diversity of practice, it is clearly established, that the creditor of one partner, by attaching company property, attaches only the aforesaid *residuum.* Hence, where there is a joint commission against partners in bankruptcy, it would be the highest injustice, as well as a palpable violation of a clear rule of law, if separate creditors were permitted to take, *pari passu* with joint creditors.

We think too, joint creditors may be said to give credit with special reference to the property of the company; but to this idea we do not attach much importance; and although it may not be sufficient, of itself, to establish the rule prac-

*Hartford,*
*June, 1851.*

Camp
*v.*
Grant.

ticed upon by Lord *Thurlow ;* it is clearly a rule of equity, that joint creditors, working through the equities of the partners, shall have a *prior* lien upon partnership property. But what can be said in favour of the converse of this rule— that joint creditors shall not come in, *pari passu*, with separate creditors, upon private property ? Here there are no equities to be worked out in behalf of copartners. So it is true, that private property *may* be taken, on a joint execution, even to the entire exclusion of private creditors. It is, in truth and equity, a private debt due from each partner absolutely ; and hence, if a joint creditor first attaches separate property, he will take precedence in obtaining satisfaction, unless he is defeated by a bankrupt law.

It is possible, that in some cases, private debts are contracted upon the credit of private property, and joint debts upon the credit of joint property ; but this is by no means always the case ; nor is it so generally the case, as to render it proper to make it the foundation of a general rule of equity. The exact truth in this particular, cannot well be known, in most cases ; and courts of justice have no right to speculate on a possibility, and make it the basis of their judgment. We know, that the creditor usually gives credit, upon considering the *whole* property and all the responsibilities of his debtors, whether as a partner or an individual ; and this is all the court is interested to know. And although joint debtors have rights between themselves, which protect the interest of one of them in the partnership property, from the private debts of the other, worked out by holding joint property to be first liable for joint debts, this is a different case ; and therefore the rule is not necessarily to be reciprocally applied.

Nor is it easy to comprehend how it can be any longer held, by enlightened judges, that the creditor of a partnership cannot, upon the death of one of the partners, look directly to his estate for payment, since it is perfectly established that the debt is several as well as joint.

Mr. *Collyer,* in his work on *Partnership, p.* 623., (2nd ed.) while admitting that the cases shew the rule to be as claimed by the appellant, says : If this point were decided on principle alone, and without reference to any supposed analogy between the practice in the court of equity and the practice

in bankruptcy, it seems clear, that the partnership creditor,

as resting on his separate contract, would have a right to come in competition with the separate creditors.

Lord *Hardwicke's* rule has received but little favour or countenance in this country. In *Bell* v. *Newman*, 5 *Serg. & Rawle*, 78. *Tilghman*, Ch. J., in giving the opinion of the court, after discussing the subject at length, and reviewing the cases in the *English* chancery, rejects the present practice of the *English* courts. In *Allen* v. *Wells*, 22 *Pick.* 450., there is a like review and a like conclusion come to, by the court. Judge *Story*, in his treatise on *Partnership*, § 377. says: " This rule, (the present *English* rule) although now fairly established, has occasioned much diversity of opinion among learned judges, at different times. It was established at an early period; but was afterwards departed from, and was again re-established; and it now stands as much, if not more, upon the general ground of authority, and the maxim *stare decisis*, than upon the ground of any equitable reasoning; in truth, it is precisely such a case as may well justify a great deal of argument on each side; and although it has been said, that the equity of this mode of distribution is very plain, because each estate ought to bear its own debts; yet it is by no means clear, that this is not an artificial suggestion, cutting down the difficulty and assuming the correctness of the rule, rather than showing it had its origin and foundation in the principles of natural justice *ex æquo et bono*." In his *Equity, vol.* 1. § 676., he says : " A broader principle is now established, and it is held, that insolvency or bankruptcy is not necessary, in order to justify the creditors of the partnership in resorting to the assets of the deceased partner; and that such creditors may, in the first instance, proceed against the executor or administrator of the deceased partner, leaving *him* to his remedy over against the surviving partners."

We will here add, that this last suggestion relieves the case from any real or supposed hardship. If the estate of the deceased partner ought not, as to the survivor, to pay the debt, but the survivor only, and he has ample property, let the estate pay as if it were a several debt; and then the executor may sue the survivor, and get a settlement of the company accounts. If the estate should be found liable

after all, as to the survivor, to pay the debt, the presentation and allowance of it by commissioners, is the only remedy to accomplish this result.  This would have been the case, if both partners were alive ; and the death of neither can make a difference, in a case presented to commissioners.

There are many cases in the books, as *Lawrence* v. *Trustees*, &c. 2 *Denio*, 517.  *Bradley* v. *Barnwell*, 3 *Denio*, 61. *Pendleton* & al. v. *Phelps* & al. 4 *Day*, 476.  *Alsop* v. *Mather* 8 *Conn. R*. 585.  *Sturges* v. *Beach*, 1 *Conn. R*. 508., where it is held, that a suit in chancery will not lie to recover a partnership debt out of the assets of the deceased partner, unless the survivor is proved to be insolvent.

Now, without saying how much this rule is to be qualified, by the more recent principle of equity, well established, that partnership debts are in equity several as well as joint, the objection grows altogether out of the *mode* of proceeding to enforce judgment, and not out of the nature or individuality of the debt.  At law, the survivor only can be sued on a joint promise ; and if the survivor is able to pay the debt, there is no *necessity*, and therefore, there is no *right*, to go into a court of equity ; and hence the rule above mentioned. No such technical or jurisdictional objection applies to this case ; for here the claim is simply presented to a board of commissioners, the only tribunal which can adjudicate claims upon insolvent estates ; and they must allow it, if it is just and right.

Again, it has been urged, that if joint creditors can come upon the private property of an insolvent debtor *pari passu* with private creditors, then, if we do not allow the rule to work conversely, and permit private creditors to come in upon company property *pari passu* with company creditors, we give joint creditors an advantage over private creditors. This is so ; but it is no other advantage than what appertains to a creditor having two securities over another creditor who has but one.  If, because through the equities of a deceased partner, joint creditors have a prior lien on the company property, or in other words, if a partner cannot *himself* appropriate company property to pay his private debts, to the injury of his copartner ; and has no other private interest which can be taken by execution or otherwise, in the property than what remains upon a settlement of

partnership accounts ; the inequality or advantage does not grow out of an unequal application of a rule of equity, but out of the nature of the debt and property in question. In *England*, it may be true, and we believe it is, that under their bankruptcy law, creditors who prove their debts, must put themselves upon an entire equality with other creditors.

*Hartford,*
June, 1851.

Camp
*v.*
Grant.

In *Cull. B. L.* 145–147., it is said, that a creditor shall not be allowed to prove his debt, unless he swears he has no security, or offers to give up what he has. But this is no rule of equity, nor of fairness even ; for we well know, and such is the practice, that if a creditor, by originally taking security for his debt, or by acquiring it, afterwards, by extraordinary diligence, secures to himself the means of paying part of his debt, he is not, thereby, prevented standing upon an equality with others, for the payment of the remainder. Estates are perpetually settled upon this principle ; and have been, from the earliest periods of our history. In *Findley* v. *Hosmer*, 2 *Conn. R.* 352. this exact question was made and decided ; and the court held, that a creditor might pursue all his remedies until he was paid in full ; and that until then, he could not be marshalled out of any of his securities, or defeated in any of the remedies which were opened to others, to collect their debts.

Upon full consideration, we decide, that the rule adopted by Lord *Thurlow*, is the true and just one, to wit—that the debts of a partnership are in equity joint and several ; and that partnership debts, where one of the partners is dead, may, at once, be presented against his estate, though the survivor be solvent and within the jurisdiction of our courts.

We advise that the decree of the court of probate be not reversed.

In this opinion Church, Ch. J. and Storrs and Hinman, Js. concurred.

Waite, J. I consider the rule to be perfectly well settled, in this state, that a creditor of a partnership, cannot resort to the estate of a deceased partner, while one of the partners is living and solvent.

It was so laid down, by this court, more than thirty years ago. *Sturges* v. *Beach*, 1 *Conn. R.* 507. *Swift*, Ch. J. in

delivering the opinion of the court in that case, remarked, that "*Bush*," the surviving partner, "was liable at law, for all the debts; and the creditors, if he was able to pay, could not call upon the representatives of *Norton*, the deceased partner. It is only on the failure of *Bush*, that the estate of *Norton* can be rendered liable in equity. Should a contrary principle be adopted, it might be productive of great inconvenience and injustice."

The doctrine of that case, so far as my knowledge extends, has ever since been sanctioned, by a course of uniform practice, and has been repeatedly recognised as law, by this court. *Alsop* v. *Mather*, 8 *Conn. R.* 294. *Filley* v. *Phelps*, 18 *Conn. R.* 294. And whatever modern notions may prevail elsewhere, if authorities can govern, there can be no doubt about the law here.

Upon this principle, the court of *probate* did right in allowing the claims against the partnership composed of the deceased, in his life-time, and *C. S. Grant*; for although the latter survived the former, yet it is admitted, that he afterwards died insolvent. But, in my judgment, the court erred, in allowing the debts against the partnership, of which *Jerome* was a member, because he is still living, and it is not shown that he is insolvent.

It is however said, that it does not appear but that such is his condition. The record is indeed silent upon that subject. But according to the authority of the case cited, the *insolvency* of the survivor is the *very foundation* of the right to proceed against the estate of the deceased. "There can be no occasion," said Ch. J. *Swift*, in that case, "to resort to the estate of the deceased partner, *unless the survivor is insolvent*." That fact, therefore, must be shown, by the creditor, to enable him to sustain his claim against the estate of the deceased.

Such clearly has been considered the law in relation to solvent estates. And the same reasons apply, with as great, if not greater force, to those that are insolvent.

If every creditor of the partnership may present his claim to the commissioners upon the estate of the deceased partner, and there have it settled and adjusted, and then receive his dividend upon the full amount from the private assets of the deceased, in the language of Judge *Swift*, "it might be

productive of great inconvenience and injustice." In many cases, the settlement of such estates would be rendered tedious, complicated and expensive. In the present case, it is very difficult to see how the executors of the deceased can compel *Jerome* to advance any thing to them, until they have actually paid, at least some portion of the partnership debts; and then only to the extent of his proportion of such payments. This, in some cases, might render repeated dividends necessary. They cannot call from his possession the partnership assets; because he is clearly liable, at law, for all the partnership debts.

*Hartford,*
1851.

Carrington
*v.*
Farmington

But if the surviving solvent partner is required to close up the partnership business, pay off the debts, so far as the assets can be made applicable, and then call upon the estate of the deceased partner for his proportion of the balance of the unsatisfied debts, the settlement of the estate becomes simple and unembarrassed. And no injustice is done to the partnership creditors. They are to resort, in the first instance, to the surviving partner, and having exhausted his funds, if their debts are unsatisfied, they may then proceed against the estate of the deceased for the balance.

For these reasons, I think the decree in the court of probate, directing a dividend to be paid upon the debts due from the partnership composed of the deceased and *Jerome*, was erroneous, and ought to be set aside.

Decree of probate affirmed.