## HUTZLER BROS. *v.* PHILLIPS.

1. Findings of fact by the Circuit Judge, based upon testimony taken in open court, affirmed.
2. In action by creditors against the representatives of a party deceased and against other creditors, one of the defendant-creditors may testify to conversations had by him with the decedent.
3. Statements made by two partners to creditors of the firm, claiming as partnership assets certain real estate standing in the name of the third partner, are not admissible in evidence against an individual creditor by mortgage of such third partner.
4. The doctrine of equitable mortgage springing from a deposit of title deeds, considered. But a deposit of title deeds for the single purpose of enabling the attorney of the lender to prepare a legal mortgage in accordance with an agreement to that effect, does not raise an equitable mortgage.
5. The money having been advanced under such an agreement, but the execution of the mortgage prevented by the sudden death of the borrower, can the creditor demand specific performance of the agreement (*i. e.*, the execution of a mortgage) by the heirs at law of the debtor?
6. Partnership creditors, after exhausting partnership assets, are entitled to share the separate property of the partners, *pro rata*, with unsecured individual creditors.
   Only result concurred in.

Before FRASER, J., Darlington, November, 1885.

The opinion states so much of the case as was involved in the appeal. The Circuit decree, omitting its statement of the facts and pleadings, was as follows :

Several questions were made as to the admissibility of testimony which was taken down subject to the exceptions. So much of the testimony of Louis Cohen as relates to conversations and transactions between himself and C. Phillips in reference to the alleged debt and agreement to give a mortgage, was objected to as obnoxious to section 400 of the Code. The objection was made on behalf of creditors, and Louis Cohen stands in relation to this action only as a creditor. No objection was made, either by the surviving partner or the administrator either of C. Phillips or Leonard Phillips, or their heirs. The general rule established by section 400 is that interest in the event of the action does not disqualify. The disqualification extends only to the classes of persons mentioned in the exception in this section. The court is confined to the letter of the exceptions (*Cantey* v. *Whitaker*, 17 *S. C.*, 530), and creditors are not included in them. I therefore hold that such testimony of Louis Cohen is competent.

The testimony of several witnesses as to statements made by the partners of C. Phillips, who were also his sons, as to the property of the firm, and tending to show that this real estate was copartnership, and not individual, property, is incompetent as against Louis Cohen & Co., or any other creditors of C. Phillips, unless some notice of such statement had been brought home to them before the time their claims originated. They had a right to deal with C. Phillips in reference to property standing in his name as his own. There is nothing in the testimony to show that Louis Cohen & Co. had any notice, or were in any way affected with notice of any such statements. It is therefore unnecessary to decide whether these statements were anything more than representations of amount of property which could be made available for the payment of the debts of the firm, without any reference to its character as individual or partnership property. I think that there is sufficient evidence without relying on the tes-

timony of Louis Cohen, which has been objected to, to sustain the following statement of so much of the facts as are necessary to determine so much of the issues as are now before me for adjudication. * * *

Whatever may be the legal effects of these transactions and of this state of the facts, I do not find any evidence of fraud or unfair dealings to affect in any way the claim of Louis Cohen & Co. to having loaned the money, and made an agreement to have a mortgage executed by C. Phillips, or in procuring a formal mortgage of the real estate from the heirs of C. Phillips and Leonard Phillips.

Having held that the real estate included in this mortgage and described in the complaint was individual, and not partnership, property, it is unnecessary to consider what would be the legal effect of a mortgage of the partnership property, executed and procured by the survivor to secure what is now alleged by the other creditors to have been, if any debt at all, a copartnership, and not an individual, liability.

If there had been no transactions between C. Phillips and Louis Cohen & Co., · which created either a legal or equitable lien on this real estate, then Louis Cohen & Co. would now stand only on the footing of an individual creditor of C. Phillips. In that event I would be bound against what seems to be the weight of authority outside of this State, and hold that while the creditors of the firm are bound to exhaust the partnership assets first, they have the right after this to share *pro rata* with the individual creditors the individual estate of the deceased partners. · Such is the doctrine laid down in the last cases in this State on this subject in 9 *Rich. Eq.—Fleming* v. *Billings & Belk*, at page 149; *Gadsden* v. *Carson*, at page 252; *Wilson* v. *McConnell*, at page 500. If there had been no lien created by C. Phillips in his life-time, his estate, real and personal, should now be administered by the court so as to allow no priorities which did not exist at his death, and the mortgage executed by his heirs should be disregarded.

No formal mortgage was given by C. Phillips in his life-time. The agreement to give a mortgage was not in writing, but by parol only. If there was any lien, it was by way of an equitable

mortgage created by the act of putting the title deed in the hands of an attorney for preparing the formal mortgage in pursuance of the parol agreement to give the mortgage, and then receiving the money bargained for, on the faith that the formal mortgage would be executed. This was not simply a deposit of title deed as a security for a loan, but an agreement to give a formal mortgage and a deposit of the title deeds for the purpose of enabling the conveyancer to prepare the mortgage in due form.

After a careful examination, I have been able to find no case in this State which recognizes the doctrine that a mortgage of land can be created by the deposit of the title deeds for this purpose, except a *dictum* hereafter referred to. The doctrine that a deposit of the title deeds is a security for a debt is well recognized in England, and has been adopted in many of the States, when the deposit is made for this purpose, notwithstanding the statute of frauds. Without some better reason than that given for not adopting it in other States, I am not at liberty to disregard a doctrine of the English law, and so well supported by authority in this country. 4 *Kent*, 150; *Story Eq.*, § 1020; *Adams Eq.*, 123; 1 *Jones Mort.*, § 183; *Pom. Eq.*, § 1264.

It is said, however, that in the case before this court the deeds were not deposited as a security, but for the purpose of preparing a formal mortgage in pursuance of a parol agreement. It is said in 4 *Kent*, 150, that if the "debtor deposit his title deeds with a creditor, it is evidence of a valid agreement for a mortgage, and amounts to an equitable mortgage, which is not within the operation of the statute of frauds." 1 *Jones Mort.*, § 183, adopts the language of Lord Eldon, "that the deposit of the deeds is evidence of the agreement; but if they are deposited for the express purpose of preparing the security of a legal mortgage, is not that stronger than an implied intention?" In *Pom. Eq.*, § 1264, it is said that "the exact significance and effect of the transaction is that the debtor thereby contracts that his estate in the land shall be liable for the debt; and that he will execute such mortgage or conveyance as may be necessary to convey the estate to the creditors as security for the payment."

If such a transaction created a lien on the land, as between the parties, I see no good reason why third parties who deal with the

owner of the land, with notice of the deposit, or who had dealt with him before the execution of the lien, should not be bound by it, and I cannot adopt the limitation suggested in *Pom. Eq.*, § 1266, on this subject. A *dictum* of Chancellor Harper in *Welsh* v. *Usher*, 2 *Hill Ch.*, 170, seems to recognize the general doctrine as prevailing in this State. I therefore feel bound to recognize as law in this State, that a mortgage may be created in this State by the deposit of title deeds for this purpose; that such deposit is evidence of an implied agreement to execute a formal mortgage; that an actual agreement by parol to execute a formal mortgage accompanying such deposit, and for the preparation of which the deposit is made, is, if anything, an additional reason why a lien should be recognized, and that not only the parties, but antecedent creditors, and all who deal with notice, are bound by it.

I therefore hold, that Louis Cohen & Co. have an eqitable mortgage on this real estate to secure the payment of their debt of $5,000, and interest, and that the mortgage executed by the heirs of C. Phillips and Leonard Phillips is a recognition of their rights as they ought to be allowed by the court. It is therefore ordered and adjudged, that Louis Cohen & Co. hold a lien on the real estate described in the complaint, and in the mortgage given by the heirs, for the payment of $5,000, and interest at ten (10) per cent. per annum from October 14, 1883, and payable at one year from that date, with legal interest at seven (7) per cent. per annum on these sums from October 14, 1884.

\*       \*       \*       \*       \*       \*       \*

From this decree Cohen & Co appealed upon the ground stated in the opinion, and the plaintiffs appealed upon the following exceptions:

I. Because his honor erred in holding the testimony of Louis Cohen, as to conversations and transactions with C. Phillips, competent and admissible; it being respectfully submitted that the same was inadmissible under section 400 of the Code.

II. Because his honor erred in excluding beforehand the testimony of witnesses as to the declarations and representations of members of the firm of C. Phillips & Sons in respect to the real estate standing in the name of C. Phillips; it being respectfully

submitted that such testimony was relevant to the issues between the plaintiffs and Louis Cohen & Co., and also between the plaintiffs and the defendants, the heirs at law of C. Phillips and Leonard Phillips.

III. Because his honor erred in holding that there was nothing in the testimony tending to show that Louis Cohen & Co. were aware that the real estate standing in the name of C. Phillips had been represented to plaintiffs and to the commercial world as partnership assets of C. Phillips & Sons, there being, it is respectfully submitted, abundant testimony to that effect.

IV. Because his honor erred in holding that the real estate standing in the name of C. Phillips was individual and not partnership property, the same being against the overbearing weight of the testimony.

V. Because his honor erred in holding as follows: "I therefore feel bound to recognize as law in this State, that a mortgage may be created in this State by the deposit of title deeds for that purpose; that such deposit is evidence of an implied agreement to execute a formal mortgage; that an actual agreement by parol to execute a formal mortgage accompanying such deposit, and for the preparation of which the deposit is made, is, if anything, an additional reason why a lien should be recognized; and that not only the parties, but antecedent creditors, and all who deal with notice, are bound by it. I therefore hold, that Louis Cohen & Co. have an equitable mortgage on this real estate to secure the payment of their debt of $5,000 and interest, and that the mortgage executed by the heirs of C. Phillips and Leonard Phillips is a recognition of their rights as they ought to be allowed by the court."

VI. Because his honor erred in adjudging that Louis Cohen & Co. held a lien on the real estate described in the complaint and in the mortgage given by the heirs for the payment of $5,000 and interest.

VII. Because his honor erred in adjudging that the sheriff of Darlington County do pay to Louis Cohen & Co. the amount of five thousand nine hundred and seventy-five dollars and seventy-five cents.

VIII. Because his honor erred in holding that Louis Cohen

& Co. paid out the full sum of $5,000 to the orders of C. Phillips & Sons on the faith of the expected mortgage.

IX. Because his honor erred in holding that there was no evidence of fraud or unfair dealing to affect in any way the claim of Louis Cohen & Co., to having loaned the money and made an agreement to have a mortgage executed by C. Phillips, or in procuring a formal mortgage of the real estate from the heirs of C. Phillips and Leonard Phillips.

*Mr. C. S. Nettles*, for plaintiffs.

The doctrine that a deposit of title deeds for the purpose of securing a loan constitutes an equitable mortgage has never been adjudicated in this State, although *obiter dicta* to that effect may be found. 2 *Hill Ch.*, 170; 10 *Rich. Eq.*, 154; 3 *S. C.*, 528. Such a doctrine has been recognized in England, but not without disapprobation. 1 *Bro. C. C.*, 269; *Pom. Eq. Jur.*, § 1265; *Jones Mort.*, § 179. Such a doctrine should not be adopted here. *Gen. Stat.*, § 2019; 12 *Ves.*, 197; 19 *Id.*, 211; 2 *Wash. Real Prop.*, 504; 1 *Jones Mort.*, § 185; 11 *Ves.*, 403; 3 *Penn. St.*, 233; 3 *Heisk.*, 562; 8 *B. Mon.*, 435; 25 *Miss.*, 58; 49 *Penn. St.*, 358. The doctrine is certainly not applicable to this case, where the deed was not deposited for any such purpose. 1 *Russ.*, 374; 2 *Cox*, 243; 6 *Price*, 501; 9 *Ves.*, 115; 12 *Id.*, 199; 5 *Wheat.*, 276; 4 *Kent*, 150; 2 *Wash. Real Prop.*, 503; 2 *Story Eq. Jur.*, § 1020.

Partnership assets are primarily liable for debts of the firm. 1 *Pars. Cont.*, 211; 20 *N. J. Eq.*, 13; *Pars. Part.*, 347. But partnership creditors, after exhausting partnership assets, have a right to share *pari passu* with the individual creditors the individual estate of C. Phillips. *Dud. Eq.*, 112; 9 *Rich. Eq.*, 149, 257, 510; 1 *Atk.*, 98, 132; 1 *Cox*, 429; 2 *Bro. C. C.*, 5, 119; 3 *Ves.*, 238, 399, 573; 4 *Id.*, 837; 6 *Id.*, 813; 14 *Id.*, 447; 16 *Id.*, 193; 15 *Id.*, 52; 9 *Ves.*, 118, 126; 2 *You. & Coll.*, 553; 5 *Cranch.*, 43; 37 *Am. Dec.*, 773; 41 *Id.*, 321; 47 *Id.*, 688.

*Mr. J. N. Nathans*, for Louis Cohen & Co.

Cohen was a competent witness. 17 *S. C.*, 530. The deposit

of the title deeds in this case raised an equitable mortgage. 1 *Bro. C. C.,* 269; *Cox Ch. Cas.,* 211; *Bail. Eq.,* 125; *Pom. Eq. Jur.,* § 685; 4 *Ch. Div.,* 605; 1 *Rose,* 374; 1 *Jones Mort.,* § 183; 5 *DeG., McN., & G.,* 461; 4 *Kent,* 150; 2 *Hill Ch.,* 168; 10 *Rich. Eq.,* 154; 3 *S. C.,* 528; 21 *N. Y.,* 584; 29 *N. J. Eq.,* 224; 16 *Wisc.,* 327; 24 *Me.,* 311; 29 *Cal.,* 398; 10 *Sm. & M.,* 418; 4 *R. I.,* 512; *Pom. Eq. Jur.,* § 1266.

*Mr. R. W. Boyd,* in reply.

February 19, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. C. Phillips, Leonard Phillips, and Leopold Phillips, father and sons, were copartners, doing business as merchants in the town of Florence, in this State, under the name of C. Phillips & Sons. During the existence of this partnership, C. Phillips, the father, negotiated a loan of $5,000 from the defendants, Louis Cohen & Co., of Charleston, with the understanding and agreement that said loan was to be secured by a mortgage of certain real estate situated in Florence, the titles to which were in the name of the said C. Phillips, except one portion, to which he had a bond for titles from one McRary, under a contract to purchase, upon which a part of the purchase money had been paid. In pursuance of this agreement the title deeds, having been placed in the hands of the said Louis Cohen for examination, were turned over to their attorney, J. N. Nathans, Esq., who drew a bond and mortgage as agreed upon. These papers were at once forwarded to C. Phillips at Florence by express, but for some reason the package remained in the office for some days uncalled for. In the meantime, however, the $5,000 had been advanced by Cohen & Co., on drafts of C. Phillips & Sons, drawn (as stated) at the request of the said C. Phillips. When the package containing the bond and mortgage aforesaid was at length received, C. Phillips was quite ill, and he died within a few days, leaving the bond and mortgage unexecuted. Leonard Phillips also died within two or three months after the death of his father, leaving the defendant, Leopold, sole survivor of the firm. Shortly after the death of the said C.

Phillips and Leonard Phillips, to wit, on the 6th of March, 1884 (the said C. Phillips having died in October previous, and Leonard Phillips in January, 1884), their heirs and distributees, in order to secure the payment of the said $5,000 to Cohen & Co., united in a mortgage of the real estate herein mentioned to the said Cohen & Co., which, on the 8th of March, was placed on record in the clerk's office for Darlington County.

After the death of his copartners, Leopold was left in charge as survivor, and the plaintiffs, not being satisfied with his management, instituted the action below, in which they prayed, in their own behalf and in behalf of the other creditors of C. Phillips & Sons, an injunction, the appointment of a receiver, an accounting from Leopold, and especially that the real estate described in the complaint (to wit, the real estate embraced in the mortgage hereinabove mentioned) be adjudged to belong to the firm of C. Phillips & Sons, and therefore assets for the payment of their debts, and that the same be sold to that end; and also that McRary be required, upon payment made to him of the balance of the purchase money of the land under contract of sale to C. Phillips, to convey the same to the receiver as assets also of the said firm. The defendants denied that the real estate mentioned was the property of the firm, and claimed that it belonged entirely to C. Phillips, their father. They denied also the allegation of fraud in connection with the loan of $5,000 by Cohen & Co., and the execution of the papers intended to secure the same; and Cohen & Co. claimed the benefit of an equitable mortgage growing out of the deposit of titles, under the facts as stated above.

The Circuit Judge, his honor, T. B. Fraser, found as matters of fact, that the real estate mentioned belonged to C. Phillips individually, and was not partnership property, and that there was no fraud in the transaction with Cohen & Co. He also adjudged as matter of law, that an equitable mortgage had arisen in favor of Cohen & Co., to the benefit of which they were entitled, in preference to plaintiffs and other creditors. He further adjudged, that if there had been no transaction between C. Phillips and Cohen & Co., creating a lien on the real estate, then Cohen & Co. would stand as an individual creditor of C. Phillips,

and in that event he would hold that while the creditors of the firm were bound to exhaust the partnership assets, they would then have the right to share *pro rata* with the individual creditors the individual estate of the deceased partners.

The plaintiffs' appeal questions the rulings of his honor as to the competency of certain testimony, which will be noticed below. Also the findings of fact of his honor as to the alleged fraud, as to the real estate not being partnership property, and as to the knowledge of Cohen & Co. that said real estate had been represented to the plaintiffs as partnership property, and also his holding in reference to the equitable mortgage by the deposit of the title deeds and its application to this case. The defendants, Cohen & Co., excepted on the ground that his honor "seemed to hold that the real estate of C. Phillips, though individual property, is not first applicable to the payment of the said Cohen & Co., as individual creditor in priority to partnership creditors of C. Phillips & Sons."

We do not feel authorized to disturb the findings of fact by his honor. There is no patent error in these findings, nor is the weight of the testimony against them. As to the real estate being partnership property, the evidence is, that the titles were certainly in C. Phillips when the copartnership was formed, and there was no express change subsequent thereto. Nor do we find any testimony that it was the intention of the parties to embrace the real estate as a portion of the partnership property. The firm seems to have been an ordinary mercantile firm, having no connection with the purchase and sale of real estate. As to the alleged conspiracy and fraud between Cohen & Co. and C. Phillips & Sons, seeking to put the said real estate beyond the reach of the creditors of the firm, we see nothing to overthrow the findings of his honor thereon. Nor does it appear that Cohen & Co. had any information that the plaintiffs had been informed that said real estate belonged to the firm.

Nor was there error in the rulings of his honor upon the competency of certain testimony offered. The testimony of Louis Cohen relating to conversations and transactions between himself and C. Phillips was objected to as obnoxious to section 400 of the Code. This testimony not being against any one belonging

to the classes mentioned by this section, there was no error in admitting it.   *Cantey* v. *Whitaker*, 17 *S. C.*, 530.

Certain testimony as to statements made by the sons, copartners, that the real estate in question was partnership property, was excluded as to Cohen & Co., on the ground that said statements had not been brought home to them before their claim originated, the court holding that they, Cohen & Co., had the right to deal with C. Phillips in reference to property standing in his name as his own—the record showing that this real estate belonged to C. Phillips, and there being no record of a transfer to the copartnership.  The reasons given by his honor seem to be sufficient.

The main question in the case is the one in reference to the equitable mortgage.  And this involves the consideration of the three following points : 1st. What is this doctrine of equitable mortgages, created by the deposit of title deeds ?   2nd. Does it exist in this State ?  And, 3rd. If so, do the facts of this case entitle Cohen & Co. to its benefit ?

. The leading case upon this doctrine in England is the case of *Russel* v. *Russel*, 1 *Bro. C. C.*, 229.  In fact, it is from this case, we first hear of it.  It was followed by *Birch* v. *Ellames* (2 *Anst.*, 429), and although it has been violently attacked and denounced as pernicious by eminent English judges, and especially by Lord Eldon and Sir William Grant, yet it now seems to be well settled and firmly established in the English law, and in many of the American States, to a certain extent, to wit, where the title deeds are deposited as a present security, and with the intent thereby to give a lien upon the land, such deposit shall operate as an equitable mortgage, notwithstanding the statute of frauds.   The English courts, however, have manifested a determined disposition to keep within the letter of the precedents, and not to give the doctrine further extension.   And accordingly they have held that a mere parol agreement to make a mortgage, or to deposit a deed for that purpose, will not give any title in equity.   There must be an actual and *bona fide* deposit of the title deeds with the mortgagee himself in order to create the lien. These positions will be found sustained, we think, in the following English cases : *Ex parte Whitbread*, 19 *Ves.*, 209; *Ex*

*parte Langston,* 17 *Id.,* 230 ; Lord Ellenborough in *Doe* v. *Hanke,* 2 *East,* 481 ; *Ex parte Kensington,* 2 *Ves. & B.,* 79 ; *Ex parte Coombe,* 4 *Mad.,* 249 ; *Lucas* v. *Dorrien,* 7 *Taunt.,* 279 ; *Ex parte Coming,* 9 *Ves.,* 117. Also in 4 *Kent,* 151, and *Washburn on Real Property.*

It appears from these authorities that in England, and also in several of the States, that where the title deeds are actually deposited by the debtor with his creditor upon an advance of money, and perhaps even for an antecedent debt, as a security, that the equitable mortgage will arise without more ; the deposit standing in the place of an actual mortgage, and dispensing with the necessity of the execution of such mortgage. But will the deposit of title deeds for the purpose of having an actual mortgage prepared for execution in accordance with an agreement to that effect raise the equitable mortgage ? In other words, where money is proposed to be lent upon the security of a mortgage to be actually executed and delivered, and the titles are placed in the hands of an attorney to prepare the mortgage so as to accomplish the loan, which, although prepared, yet the debtor, from accident or some other cause, fails to execute and deliver, although he has received the money, will these facts create the mortgage ?

Mr. Washburn says : "To give the effect of a lien to the possession of title deeds, it must be shown affirmatively that they were deposited as a *bona fide,* present, immediate security. If left, for instance, with the attorney for the purpose of his drawing a mortgage which had been agreed upon by the parties, it will not be sufficient. Mere possession, even by a creditor, is not enough." 2 *Wash. Real Prop.,* 89. See cases referred to in note by Mr. Washburn. And in *Ex parte Bolton* (2 *Cox,* 243), it was held, "that the delivery of title deeds to an attorney to prepare a mortgage deed does not amount to an equitable mortgage, otherwise if deposited expressly as a security for a debt." We think the weight of authority is against this doctrine being applied to cases with facts like those suggested, and that an equitable mortgage resulting from a deposit of title deeds can exist only where such deposit is the matter relied upon without anything further being done.

Does this doctrine exist in South Carolina ? We have been

referred to no case where the question has been squarely made, but it seems that the possibility of such mortgages has been recognized in three of our cases, to wit: *Welsh* v. *Usher*, 2 *Hill Ch.*, 170; *Harper* v. *Barsh*, 10 *Rich. Eq.*, 154; *Boyce* v. *Shiver*, 3 *S. C.*, 528. And although perhaps the question was not absolutely necessary to the decision of the points actually involved in these cases, yet we are disposed to regard the recognition made as sufficient to the extent as above.

Do the facts of the case bring it under the doctrine as above? Clearly not. The title deeds were not deposited as an immediate security, nor did Cohen & Co. rely upon them in the least as giving in themselves the lien which he wanted, and for which he contracted. They were placed in his hands as affording the information upon which a bond and mortgage were to be drawn. These papers were actually drawn and sent, doubtless with the titles, to C. Phillips for formal execution, but which his sickness and death prevented. With these facts we do not see how it can be said that the title deeds had been deposited in order to raise by the deposit an equitable mortgage.

We concur with the Circuit Judge, that in the absence of a lien in favor of an individual creditor, partnership creditors, after exhausting partnership assets, may share *pro rata* in the individual property of the partners. The English rule upon this subject is to apply the joint estate to the joint debts, and the separate estate to the separate debts, though this rule has not met the uniform approval of all the English judges. Lord Thurlow disregarded it in the case of *Ex parte Hodgson*, 2 *Bro. C. C.*, 5, and Lord Eldon failed to give it his cordial approval. It may, however, be regarded as the established rule in the English law. In this State, from 1804 to 1827, the English rule as above seems to have been followed. During this period there are three cases sustaining this view, *Tunno* v. *Trezevant*, 2 *DeSaus.*, decided in 1808; *Woddrop* v. *Price*, 3 *Id.*, 207, decided in 1811; and the case of *Sniffer & Paxton* v. *Sass*, decided in 1827, found in a note to *Kuhne* v. *Law*, 14 *Rich.*, 20.

But afterwards, from 1827 to 1866, our courts held, in substance, that while private creditors had the right generally to throw the copartnership creditors upon copartnership assets in

the first instance on the two-fund doctrine, yet that copartnership creditors, after exhausting copartnership assets, had the right to share the individual assets *pro rata* with the individual creditors. During this period the leading cases on this subject were : *Wardlaw* v. *Gray, Dudley Eq.*, 112, decided in 1837 ; *Gowan* v. *Tunno, Rich. Eq. Cas.*, 369, in 1832 ; *Fleming* v. *Billings and Belk*, 9 *Rich. Eq.*, 149 ; *Gadsden* v. *Carson, Ibid.*, 252 ; and *Wilson* v. *McConnell, Ibid.*, 500, in 1856 and 1857—in all of which the rule, as above stated, was recognized as the settled law of the State. *Roberts* v. *Roberts* (8 *Rich.*, 15, in 1854) held that of two executions of same date, one in favor of partnership creditors, and the other in favor of separate creditors, and both levied on separate property, the execution of the separate creditors should prevail ; but in 1866 this was overruled by the Court of Errors, and in *Kuhne* v. *Law* (1866, 14 *Rich.*, 28), which was a contest between a senior copartnership judgment creditor and a junior separate judgment creditor, over the proceeds of the separate property of the debtor by rule against the sheriff in behalf of the separate creditor to have said proceeds applied to his judgment, the court held, *Roberts* v. *Roberts, supra*, having been in substance overruled, that a separate creditor could not set up any equity, even if he had any, in a law court ; that in such courts the liens could only be looked at, and that they should be satisfied according to their priority, and the rule was dismissed. In that case it was stated by Judge Wardlaw in delivering the opinion that the Court of Errors, when *Roberts* v. *Roberts* was considered, attained no satisfactory conclusion respecting the rule which should prevail in equity in the distribution of separate effects between separate and partnership creditors. But the judges (he said) were nearly, if not entirely, unanimous in the opinion that at law the supposed preference given to a separate creditor should not be allowed to prevail against a prior lien acquired by a partnership creditor. In *Adickes* v. *Lowry*, 15 *S. C.*, 136, the present court, Mr. Justice McIver delivering the opinion, said : "This question seems yet open in this State."

The above is the state of the authorities upon this subject. Under the circumstances, we think the weight of authority is in

favor of the rule as decided below by the Circuit Judge. Certainly from 1832 to 1866, from *Gowan* v. *Tunno* to *Kuhne* v. *Law*, *supra*, in the courts then under the direction of the most eminent jurists that have ever adorned the bench in this State, such was regarded to be the rule. It was so announced in all of these cases without hesitation or qualification, and it seems to us that the case of *Kuhne* v. *Law*, *supra* (from which it seems that a doubt first came), upon a careful consideration of the principle decided there, instead of raising a doubt, should have affirmed the rule. It was there held, as we have stated, that a senior copartnership judgment creditor had priority to a junior separate judgment creditor upon separate property. Now, unless each of these creditors had an equal claim upon the separate property before judgment, or, in other words, an equal right to seek payment out of the separate property, it is not clear how either could get priority by obtaining judgment in advance of the other.

If separate creditors have a right as a principle of equity or law to postpone copartnership creditors as to separate assets, a judgment obtained, as it seems to us, by the copartnership creditor would be subject to that right, and could not have a lien prior thereto. We think the true doctrine is as stated by the Circuit Judge, with the right of the separate creditor, if any equity exists in his behalf, such as two funds, to throw the copartnership creditor on the partnership assets in the first instance; but after the partnership assets have been fully and fairly exhausted, to come in *pro rata* with the separate creditor. This seems to be the weight of authority with us.

Besides, a debt contracted by a copartnership is not only a debt of the firm, but a debt in substance of each individual member of the firm, and the property of the firm, and of each member, is liable for it; but the property of the firm is not liable for the separate debt of a member—only the interest of the member is liable, which is nothing until the firm debts are paid. So that, because a copartnership creditor has an exclusive claim upon the firm property, it does not follow that a separate creditor should have an exclusive claim upon the separate property. In the first case, the effect of the contract is to pledge, as a basis of credit, both partnership and private property; in the second case, the

separate property alone gives the credit.  And as to partnership property, there is no separate property until the debts are paid, which is liable to both partnership and separate debts by contract.  *Kuhne* v. *Law*, *supra.*

While, as we have said, we do not think that an equitable mortgage was created in this case under the facts in favor of Cohen & Co., yet there was a state of facts which presents a very strong case for specific performance.  Or, at least, had C. Phillips lived, and after receiving the $5,000 from Cohen & Co. he had refused to execute the mortgage prepared and agreed upon, Cohen & Co., as against him, would have had a strong equitable claim for specific performance.  Or, if the transaction, instead of being a loan to be secured by mortgage, had been a contract of purchase by Cohen & Co., with the purchase money paid down in full, and Phillips had died before the execution of the conveyance promised, could not the titles have been demanded successfully from the heirs ?  Or, at least, if the heirs afterwards had voluntarily executed such conveyance, could it be assailed, except by subsequent creditors without notice or for fraud ?  How far this principle might operate in a mortgage transaction like that before the court, where the heirs have voluntarily come forward and have attempted to carry out the contract of their ancestor (see *Tibbetts* v. *Langley Manufacturing Co.*, 12 *S. C.*, 468), we are not now at liberty to consider, as this question was not passed upon or considered by the Circuit Judge.  We think, however, without expressing any opinion in reference to it, that it is one which Cohen & Co. should have the opportunity of making before the Circuit Judge, and to this end the case should be remanded.

It is the judgment of this court, that the judgment below be reversed, on the ground of error in the ruling of the Circuit Judge as to the equitable mortgage claimed by Cohen & Co.; and while affirming the rulings of his honor in other respects, that the judgment below be vacated, and the case be remanded for further hearing, in accordance with the principles herein above.

MR. JUSTICE McGOWAN.  As this case has to go back to the

Circuit, I think it best that all the questions should be reconsidered, and, therefore, I concur in the result.

MR. JUSTICE MCIVER.   I am not prepared to assent to the proposition that an equitable mortgage can be created in this State by a deposit of title deeds, even where such is the intention with which the deposit is made; for I do not understand that this doctrine has ever been expressly established here by either of the cases cited as recognizing it.   The policy of our law is to discountenance secret liens and, as a rule, to recognize those only which are spread upon the records for the information of the public generally.   In the absence, therefore, of any express authority here, I am not willing to recognize the doctrine.

Whether Cohen & Co. can make a case which will entitle them to a decree for specific performance of the alleged agreement of C. Phillips to give the mortgage, *as against the plaintiffs in this case, creditors,* is a question which was not considered or determined by the Circuit Court, it being unnecessary to do so under the view there taken, and therefore is not now properly before us.   Hence I am quite willing that the case should go back for the determination of that question, but without any intimation whatever by this court as to its opinion on any of the points involved in that question, either as to the effect of the advance of the money upon the faith of the promised mortgage, the voluntary execucution of it by the heirs of C. Phillips after his death, or any other matter involved.   I, therefore, concur in the result only.

Judgment reversed.