ALPHONSO B. HAWKINS and Others v. STEPHEN MAHONEY.[1]

71   155
81   172

January 12, 1898.

Nos. 10,898—(199).

Insolvency—Partnership and Individual Assets—Rule of Distribution —Equity Rule—Kentucky Rule—Surplus from Either Fund.

In insolvency proceedings, where there are both partnership and individual assets for distribution, the firm assets will be first applied to the payment of the partnership debts; and the individual assets, in like man-

1 Reported in 73 N. W. 720.

ner, to the payment of the individual debts of the partners. If there is a surplus in either fund after paying in full the creditors to whom it primarily belongs, it will be carried to the other fund, and distributed as a part thereof.

### Same—Proof of Claim—Dividends from Both Funds.

In a case where the claim of a creditor is based upon a promissory note given for money loaned to the partnership, and signed by the firm and an individual partner, such creditor is entitled to receive a dividend from the firm assets, and a dividend from the individual assets of such partner on the balance, only, of his claim, after deducting the amount of the firm dividend.

In the matter of the assignment of Arthur H. Ives and Amos P. Ireland, copartners as Ives, Ireland & Co., insolvents, in the district court for Hennepin county, the assignee, Alphonso B. Hawkins, filed his final account, the substance of which is stated in the opinion, and applied to the court for an order of distribution of the proceeds among the creditors entitled thereto.

Among the claims proved was one of the Irish-American Bank, of which Stephen Mahoney was the assignee in insolvency, upon a note for $4,000, for money lent to the firm, signed both by the firm and by Ireland individually.

Upon this application an order was made by Russell, J., directing the assignee to distribute the firm assets first among the firm creditors, including the Irish-American Bank; the individual assets of Ireland first among his individual creditors, including the Irish-American Bank upon the full amount of its claim; and the individual assets of Ives among his individual creditors.

From this order the assignee and certain firm creditors appealed. Modified.

*J. B. Phelps*, for the assignee, appellant.

The Kentucky rule for distribution of partnership and individual assets is the only method which will do equal justice and is in accordance with all of the provisions of the Minnesota statutes. Fayette v. Kenney, 79 Ky. 133; Hill v. Cornwall, 95 Ky. 512; Northern v. Keizer, 2 Duv. 169; Whitehead v. Chadwell, 2 Duv. 432. Firm creditors have a preference out of firm property, because the individual partners are not entitled to anything from the firm until

after payment of the firm debts; but it does not follow that the individual creditors of one partner shall have a preference out of his private property, because the firm creditors are at the same time creditors of the individual partners. The case is one for the application of the equitable rule of distribution that, where there are two funds, the creditor having a claim upon both funds is compelled first to resort to the fund in which the other has no claim, but only so far as it does not operate to his prejudice.

The result of distribution under the general equity rule is to give individual creditors a preference over firm creditors, which is against the letter and spirit of the Minnesota insolvent law. Metropolitan v. Northern, 61 Minn. 462; Andress v. Miller, 15 Pa. St. 316. In Minnesota firm creditors are allowed to come in equally with individual creditors upon the death of a member of the insolvent firm. In none of the states where the general equity rule prevails is this the case. 2 Bates, Partn. § 828; Hundley v. Farris, 103 Mo. 78. It is evident from this that it was not the intent of our legislature to give individual creditors any preference over firm creditors in the distribution of the private property of an individual partner. So in Massachusetts. Sparhawk v. Russell, 10 Metc. 305; Allen v. Wells, 22 Pick. 450; Bush v. Clark, 127 Mass. 111. The distribution in case of the deceased partner of an insolvent firm should be the same as the distribution in insolvency. Wilder v. Keeler, 3 Paige, 167.

In many states besides Kentucky it is held that the individual creditors of one partner have no preference over the partnership creditors in distributing the estate of that partner. Blair v. Black, 31 S. C. 346; Hutzler v. Phillips, 26 S. C. 136; Bardwell v. Perry, 19 Vt. 292; Camp v. Grant, 21 Conn. 41; Pearce v. Cooke, 13 R. I. 184; White v. Dougherty, 8 Tenn. 309; Pettyjohn v. Woodruff, 86 Va. 478; Ashby v. Porter, 26 Gratt. 455; Dahlgren v. Duncan, 7 Smed. & M. 280; Cox v. Miller, 54 Tex. 16; Wiggins v. Blackshear (Tex. Civ. App.) 24 S. W. 918. Favoring this rule are Brock v. Bateman, 25 Oh. St. 609; Fullam v. Abrahams, 29 Kan. 725.

*George F. Edwards* and *Taylor & Edwards,* for certain firm creditors, appellants.

The general equity rule of distribution is utterly subversive of two objects sought to be attained by the insolvency law, namely, to secure the equal distribution of the property of debtors among their creditors, and to prevent creditors from gaining a preference. The equal distribution sought to be secured by the insolvency law is not attained unless there is equality between the classes of creditors as well as between the individuals of a class, and under this order the individual creditors of Ireland receive a larger dividend than do the firm creditors. A creditor upon a note signed by the firm and indorsed individually by one of the partners is not entitled to receive concurrently a dividend from both firm assets and individual assets upon the full amount of his claim. The consideration for the notes and the use of the money determines the character of the debt as a firm debt no matter how the note was signed. Ireland's separate signature upon the note to the Irish-American Bank neither added to its strength nor increased his liability, nor entitled the bank to a preference in his individual assets. In re Blumer, 13 Fed. 622; Fayette v. Kenney, 79 Ky. 133. In any event, taking the note most strongly in favor of the bank, it gave it simply the right to elect against which fund it would prove. Ex parte First, 70 Me. 369.

*Walter C. Tiffany*, for an individual creditor of Ireland, appellant and respondent.

The general equity rule is thoroughly established by authority and is based upon the well-known rule that equality is equity. To deny separate creditors the same rights in separate property, which the firm creditors have in the firm property, is to ignore this principle of equity. Jarvis v. Brooks, 23 N. H. 136; Rodgers v. Meranda, 7 Oh. St. 179. In Minnesota the rule that firm creditors have priority in the firm assets is recognized in Hanson v. Metcalf, 46 Minn. 25; Masterman v. Lumbermen, 61 Minn. 299. The question as to the rights of individual creditors in the separate estate of the partners has never been expressly passed on, yet the rule contended for has been assumed to be law in Kells v. McClure, 69 Minn. 60.

In Minnesota partnership contracts are joint merely, not joint and several. Whitney v. Reese, 11 Minn. 87 (138); Fetz v. Clark,

7 Minn. 157 (217); Town v. Washburn, 14 Minn. 199 (268); Davison v. Harmon, 65 Minn. 402. Even if it be conceded, for the sake of argument, that the statutes of Minnesota make the liabilities of partners joint and several, yet such statutes affect merely methods of procedure, and do not affect or vary the well-settled equitable priorities of creditors. 2 Bates, Partn. § 828; 3 Kent, Com. 64; Hundley v. Farris, 103 Mo. 78, 86; Irby v. Graham, 46 Miss. 425; Level v. Farris, 24 Mo. App. 445, 459.

The general equity rule is law in 23 of the 27 states where the question has arisen, including the great commercial states of New York, Massachusetts, Pennsylvania, Ohio and Illinois. To allow the Irish-American Bank to take a dividend from each fund is to ignore the nature of the debt, which was money loaned to the firm. In equity the bank is entitled to a dividend in the first instance only from the fund to which it has contributed, and it cannot share equally with individual creditors in a fund which they have created. Fayette v. Kenney, 77 Ky. 139.

*Stephen Mahoney*, for respondent, assignee.

. The bank took the precaution to require one of the partners to guaranty individually by his indorsement the note of the firm. The bank is a firm creditor and must have the same rights as other firm creditors; it is also a private creditor and must have the same rights as other private creditors.' Under the national bankruptcy law the federal courts have uniformly allowed double proof and not required creditors to elect between two estates. Ex parte Farnham, 6 Boston Law Rep. 21; Emery v. Canal, 7 N. B. R. 217; In re Bradley, 2 Biss. 515. This rule has also been adopted in certain state courts. Williams v. Hall, 160 Mass. 171. The English rule has been changed by statute. 32 and 33 Vict., c. 71, § 37. See, also, Union v. Bank, 94 Ill. 271; Ex parte Nason, 70 Me. 363.

START, C. J.

Arthur H. Ives and Amos P. Ireland, partners under the firm name of Ives, Ireland & Co., duly made an assignment of all of their partnership and unexempt individual property, for the benefit of their creditors, under the insolvent laws of this state.

The net assets of the partnership for distribution amount to

$3,151.65, and the partnership debts are $19,736.34. Ireland's net individual assets are $4,000, and his individual debts $2,997.47. Ives' net assets are $100, and his personal debts $415.40. Included in the firm debts proved is that of the Irish-American Bank for $4,078.89, which is based upon the notes of the firm given to the bank for a loan by it to the firm, in the sum of $4,000, signed by the firm and by Ireland in his individual name. There is also included in the firm debts that of the St. Anthony Falls Bank for $5,512.50, which is based upon notes executed by the firm to it for a loan of $5,500, but none of these notes were signed by either of the individual partners. Each of these banks made the loan to the firm in express reliance upon the individual property and credit of Ireland.

The trial court, by its order of distribution, directed the assignee to pay the net assets of the firm, pro rata, to the firm creditors, including the Irish-American Bank, the net individual assets of Ireland, pro rata, to his individual creditors, excluding the firm creditors, except the Irish-American Bank, which was included therein to the full amount of its debt, without any deduction for the dividend thereon it was to receive from the firm assets; and the net assets of Ives to his individual creditors. The assignee and certain firm creditors appealed from this order.

The appeals present two general questions for our decision. They are: Did the trial court err, (a) in distributing the firm assets to the firm creditors, and the individual assets to the individual creditors? (b) in directing a dividend to be paid to the Irish-American Bank from both funds?

1. The trial court adopted the general equity rule in insolvency and bankruptcy for the distribution of firm and individual assets, respectively, which is, that, where there are both partnership and individual assets for distribution, the partnership assets will be first applied to the payment of partnership debts, and the individual assets, in like manner, to the payment of the individual debts of the partners. If there is a surplus in either fund after paying in full the creditors to whom it primarily belongs, it is carried to the other fund and distributed as a part thereof. The rule seems to be limited to cases where there are substantial firm assets for distribution. This we do not decide. The first half of the rule, that equity

gives to the firm creditors priority in the firm assets over the creditors of the individual partners, is conclusively settled, and everywhere accepted as the law; but the other and reciprocal half of the rule, that the separate debts of the partners are to be first paid from the individual assets, has been controverted by able courts in this country, while those which have adhered to it have not always agreed as to the reasons for its adoption.

The principles upon which the rule rests are clearly stated in the dissenting opinion of Chief Justice Gibson in the case of Bell v. Newman, 5 S. & R. 91, and the opinion of Chief Justice Bartley in Rodgers v. Meranda, 7 Oh. St. 179. The latter wrote thus of the rule:

"That it is, however, more equal and just, as a general rule, than any other which can be devised consistently with the preference to the partnership creditors in the joint estate, cannot be successfully controverted. It originated as a consequence of the rule of priority of partnership creditors in the joint estate, and, for the purposes of justice, became necessary, as a correlative rule. With what' semblance of equity could one class of creditors, in preference to the rest, be exclusively entitled to the partnership fund, and concurrently with the rest entitled to the separate estate of each partner? The joint creditors are no more meritorious than the separate creditors, and it frequently happens that the separate debts are contracted to raise means to carry on the partnership business."

Judge Story, in his time, declared the rule to be firmly established. He, however, questioned its equity and propriety, but added:

"Such as it is, however, it is for the public repose that it should be left undisturbed, as it may not be easy to substitute any other rule which would uniformly work with perfect equality and equity in the mass of intricate transactions connected with commercial operations." Story, Partn. §§ 377, 382.

The rule was expressly approved by Chancellor Kent, who declared it to rest upon just and obvious principles of equity, and to be settled by a series of English and American decisions. 3 Kent, Com. *65. Prof. Parsons declared it to be distinctively settled, and a simple rule, eminently practical, and founded upon obvious principles of policy. Parsons, Partn. §§ 382, 383. Whatever question

there may have been as to this rule half a century ago, it is now thoroughly and decisively established by the great weight and number of adjudged cases, and must be followed, unless it is contrary to the letter or spirit of our insolvency law.

The assignee claims that it is so, in that it violates the fundamental principles of equal distribution and no preferences, upon which the insolvency law rests, and asks us to adopt the Kentucky rule, which is, in effect, that where a firm is insolvent, and there are both firm and individual assets to be distributed to firm and individual creditors, the partnership assets are to be distributed exclusively to the firm creditors; then the individual creditors are to receive from the individual assets a percentage on their claims equal to that received by the firm creditors from the partnership assets on their claims; and the balance, if any, is to be distributed to all of the creditors pro rata. Northern v. Keizer, 2 Duv. 169. The original of this rule seems to be the rule adopted in Pennsylvania, in Bell v. Newman, 5 S. & R. 77, for the distribution of firm and individual assets, in a case where a surviving partner died, leaving both partnership and separate creditors, and firm and separate assets in the hands of his administrator. Gibson, J., dissented, and in his opinion ably vindicated the equity rule, and in these words tersely stated, at page 93, the objections to the rule laid down in the opinion of the court:

"It is evident, therefore, the rule would operate unequally, by making the separate creditors share their fund with the joint creditors, where it happens to be the largest, without subjecting the latter to share theirs under like circumstances. It may be said, it is impossible to put them on a footing in this respect. I grant that it cannot be done on any plan of participating in the same fund, but you precisely put them on a footing by making each fund bear the burden of its own debts; and, if that of the separate creditors should happen to be the most productive, I know not on what principle of equity they can be deprived of the advantage."

Bell v. Newman was practically overruled in Black's Appeal, 44 Pa. St. 503, and the equity rule adopted. The objections to the now discarded rule of Pennsylvania apply precisely to the Kentucky rule, which has not, so far as we are advised, been followed by any other court.

As to the claim that the equity rule is contrary to the express prohibition of our insolvency law as to preferences, it is to be noted that the equity rule is the unquestioned rule in England for the distribution in bankruptcy of the firm and separate assets, and was expressly adopted by section 14 of the federal bankruptcy act of 1841 [2] and section 36 of the act of 1867.[3] This is significant, for the prohibition of preferences is a pronounced feature of all bankrupt laws, and especially so of the bankrupt acts of 1841 and 1867. If it be held that the prohibition of preferences in our insolvency law abrogates any part of the equity rule, the whole thereof is annulled, and firm and individual assets constitute a single fund, to be distributed to firm and individual creditors pro rata. It is clear that the law cannot be so construed, and that the prohibition as to preferences relates to, and is directed against, the acts of the insolvents.

The same suggestions apply with equal force to the claim that the requirement of the insolvency law of equality in the distribution of the net assets to the creditors abrogates the equity rule. It is difficult to see upon what principle we can consistently hold, as we are, in effect, asked to do by the assignee, that the equity rule is annulled by the provisions of the insolvent law forbidding preferences and requiring equality of distribution, and adopt in place of it the Kentucky rule; for the latter permits the firm creditors to have the exclusive benefit of the firm assets, if they are greater and pay a greater dividend to firm creditors than the individual assets do to individual creditors; but, if they are less, then, and only then, the two classes of creditors share equally. The firm creditors never share their fund with the separate creditors, but the latter must share theirs with the former, whenever it is the larger. If one of these rules is forbidden by the insolvency law, the other is also.

The fact that the insolvency law contains no directions for marshaling the assets of insolvents where there are different classes of creditors and different funds, indicates that it was the intention of the legislature to leave the settled equity rule in force. The

[2] 5 Stat. 448.　　　　　　　　　　　[3] 14 Stat. 534.

requirement, in the insolvency law, of equality and no preferences is subordinate to the settled equities and priorities of partnership creditors in and to the firm assets, and the correlative equities and priorities of the separate creditors in and to the separate assets, when the assets are marshaled and distributed by the court in insolvency proceedings. The direction of the statute for the equal distribution of the insolvent's property means a distribution in accordance with the recognized rules of equity. See Hanson v. Metcalf, 46 Minn. 25, 48 N. W. 441; Kells v. McClure, 69 Minn. 60, 71 N. W. 827.

It is further urged that the rule of distribution and priority in the insolvency court and probate court should be the same, and that the equity rule cannot be followed in the probate court, in the allowance and payment of claims against the estate of a deceased partner, because the Probate Code (G. S. 1894, § 4521) provides, in effect, that when two or more persons are indebted on a joint contract, and one of them dies, his estate is liable thereon, and it may be allowed by the probate court as if it were joint and several. We are not called upon here to construe this statute, or determine what the rule of distribution in the probate court would be. It may, however, be suggested, without deciding the question, that it seems to be well settled in other states that statutes making partnership debts joint and several, and statutes providing for the allowance of joint claims in the probate court as if joint and several, are not intended to abrogate all equitable priorities of partnership and individual creditors, respectively, in the partnership and individual estates, or to introduce any new rule for marshaling the assets of the joint and separate estates. 2 Bates, Partn. § 828.

2. The claim of the Irish-American Bank was based upon promissory notes executed by the firm of Ives, Ireland & Co., and by Ireland in his individual name; and for this reason the trial court permitted the bank to receive a dividend on the full amount of its claim, from both partnership and individual funds. The trial court's order in this respect is claimed to be erroneous, for the reason that the consideration of the notes determines the character of the debt, which was for money loaned to, and used by, the firm; hence it is immaterial whether or not the individual name of the

partner is on the notes, for with or without it they represent a partnership debt, for which he is liable; consequently the bank has no equities superior to the other firm creditors.

The question of double proof in such a case is not a new one. It was at one time the rule in England that a creditor holding a note signed by the firm and an individual partner must, in bankruptcy, elect which estate he would prove his claim against. The rule is, and always has been, otherwise in this country, and it is settled by a very decided weight of authority that such double proof is permissible. Parsons, Partn. § 390; 2 Bates, Partn. § 841; 17 Am. & Eng. Enc. 1210; Emery v. Bank, 7 N. B. R. 217, Fed. Cas. No. 4,446; In re Bradley, 2 Biss. 515, Fed. Cas. No. 1,772; Ex parte Nason, 70 Me. 363; Roger v. Hall, 160 Mass. 171, 35 N. E. 666. It is true, as claimed, that the federal bankrupt law of 1867 provided for double proof in certain cases; but Judge Clifford, in Emery v. Bank, clearly indicates that, independently of the statute, where a creditor has taken the precaution, before parting with his money, to secure an express written contract for its repayment from both the firm and the individual partner, his right is clear, in case of bankruptcy, to the benefit of his caution, and he is entitled to prove his claim against, and receive a dividend from, both the fund belonging to the partnership, and also the estate of the individual partner. This precise question was involved in the cases of Ex parte Nason and Roger v. Hall, supra, and in each the rule as to double proof was maintained on principle. In the last-named case the court, after citing the authorities in support of the rule, concludes thus:

"In view of the modern decisions, and the general agreement of opinion, we think it unnecessary to argue elaborately for the right of a creditor who has required two contracts, binding two distinct estates, to insist upon both."

Our conclusion on this question is that the Irish-American Bank was entitled to receive a dividend on its claim from both funds. The trial court, however, directed a dividend to be paid to it from both funds, concurrently, on the full amount of its debt. There are authorities sustaining this part of the order, but it is manifestly inequitable to other creditors. When the bank receives a dividend

from the firm assets, the primary fund for the payment of its claim, its debt is paid pro tanto; and to permit it to receive a dividend from the individual assets, on the part of its debt paid from the firm assets, to the prejudice of other creditors, is not just, and therefore not legal, in the absence of any statute declaring it to be so.

It follows that the order appealed from must be modified so as to permit the bank to receive a dividend from the individual assets of Ireland only on the balance of its claim after applying as a payment its dividend from the firm assets, and that this case must be remanded, with direction to the district court so to do. So ordered, without statutory costs.

MITCHELL, J.

I concur, except in the result arrived at as to the claim of the Irish-American Bank. I think the consideration of the debt should, in this case, determine the class to which the claim belongs, and that, notwithstanding the authorities cited to the contrary, the claim of the bank should be treated as exclusively a partnership debt. A partnership is but an aggregation of individuals, and not an entity distinct from the members composing it. It is wholly inconsistent with the spirit and purposes of our insolvent law to permit one dealing with a partnership to obtain a preference by securing on the evidence of the debt the signatures of the members of the firm, individually, in addition to their signatures by their firm name. There is nothing in the general equity rule for the distribution of partnership and individual assets which requires any such result.

CANTY, J.

I concur with Justice MITCHELL.