C. L. F. ROBINSON, ADMINISTRATOR, *vs.* THE SECURITY
COMPANY, TRUSTEE, ET ALS. (ROBINSON, ADMINIS-
TRATOR, APPEAL FROM PROBATE).

First Judicial District, Hartford, May Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In case of the insolvency of a partnership and each of its members, the
creditors of the firm are, in this State, entitled not only to exhaust
all the partnership assets, but, with respect to the balance of their
claims, to share ratably with the separate creditors of each partner
in the assets of his estate.
This rule, which differs from that prevailing in England and in many of
the States of this country, recognizes the several as well as the
joint nature of partnership obligations, and simply preserves to
partnership creditors, after insolvency, the advantage which, before
that, they possessed over the separate creditors of a partner.
The case of *Camp* v. *Grant*, 21 Conn. 41, explained and followed.

Argued May 6th—decided July 25th, 1913.

APPEAL from an order and decree of the Court of Pro-
bate for the district of Hartford distributing the assets
of the insolvent estate of a copartnership and those of
its individual members, taken by the plaintiff, a part-
nership creditor, to, and reserved by, the Superior Court
in Hartford County, *Holcomb, J.,* for the advice of this
court. *Judgment advised for the plaintiff.*

The estates of Hubbard and Farmer, a copartner-
ship, and of William D. Hubbard and R. W. Farmer, its
two copartners, have been in the process of settlement
as insolvent estates in the Court of Probate for the
district of Hartford since 1887. They are now ready for
final distribution. The assets of the partnership avail-
able for distribution amount to $24,609.24; those of the
separate estate of Hubbard to $2,609.07; and those
of the separate estate of Farmer to $5,053.58. The
claims allowed against the copartnership amount to

$432,465.17. Among these claims is one of $273,046.94 in favor of the estate of C. N. Beach, deceased, of which the appellant is administrator. The claims allowed against the separate estates of Hubbard and Farmer amount to $13,934.29 and $17,130.29, respectively. Among the claims against the estate of Hubbard is one of $9,525 due the estate of Beach, and among those against the estate of Farmer are two, amounting to $14,080, in favor of the Charter Oak National Bank of Hartford.

The Court of Probate, in its order of final distribution, directed that the partnership assets should be ratably divided among the partnership creditors, and the assets of each of the separate estates among the individual creditors of such estate. The dividends thus ordered to be paid amounted to 5.55 per cent. to the partnership creditors, 18 per cent. to the separate creditors of Hubbard, and 29 per cent. to the separate creditors of Farmer. The Charter Oak National Bank appeared in support of the order of distribution.

*Harry W. Reynolds,* for Robinson, Administrator, the appellant.

*Charles Welles Gross,* for Charter Oak National Bank, the appellee.

PRENTICE, C. J. The estates of a partnership and of its two individual partners are in process of settlement as insolvent estates in the Court of Probate. The assets of the three estates have been converted into cash, the liabilities of each determined, and nothing remains to be done but to distribute the net assets among the creditors whose claims have been allowed. The assets of the partnership are insufficient to pay the partnership debts, and those of each of the individual

estates insufficient to satisfy the separate claims allowed against it. The situation is one where there is joint estate of the partnership, and where all the funds, to which any of the several classes of creditors could resort for the satisfaction or reduction of their claims, are in the hands of the court for distribution. The sole question presented is as to the mode of distribution to be adopted under such conditions. The Court of Probate, in its order of distribution, applied what, for convenience sake, we may call the English rule, and directed that the partnership creditors should share the partnership or joint fund ratably, and the separate creditors of each individual partner share the fund belonging to his separate estate. The partnership creditors were thus forbidden to participate in the division of the separate estates.

No complaint is made of so much of the order as appropriated the joint fund to the partnership creditors. In that respect the court followed the well-established rule governing the rights of partners in such cases. *Camp* v. *Grant,* 21 Conn. 41, 59; *Ex parte Elton,* 3 Ves. Jr. 238, 239; *Ex parte Williams,* 11 Ves. Jr. 3, 4; *Washburn* v. *Bellows Falls Bank,* 19 Vt. 278, 285.

The complaint of the appellant, a partnership creditor, is addressed to the remaining portion of the order, which allowed the separate creditors to absorb all the distributable assets of the individual estates, and forbade the partnership creditors from participating in their division. He claims that he should have been permitted to share in the distribution of each of these estates *pari passu* with the individual creditors, upon the basis of the amount of his claim remaining unsatisfied after the dividend received by him in the division of the joint estate had been credited. In support of his claim he urges that it rests upon sound reason, and that it has had the approval of this court in *Camp* v. *Grant,*

21 Conn. 41. The separate creditor, who appears to defend the action of the Court of Probate, asserts that that court adopted the correct rule, and the one overwhelmingly supported by the authorities, English and American.

The question thus put in issue, involving as it does a determination of the rule to be applied in the distribution of partnership and individual assets where there are both partnership and individual creditors and insufficient assets to pay all claimants, is one which has long engaged the attention of the courts, and around which has gathered much judicial discussion. The pertinent English cases alone are formidable in number, and run back to *Ex parte Crowder*, 2 Vern. 706, decided in 1715. Numerous attempts have been made to review these cases, and to trace through them the development and present state of the English law. Many of these attempts have been both inadequate and unsatisfactory by reason of a failure to appreciate English bankruptcy methods, the difference between joint and separate commissions in bankruptcy with the differing conditions created by each class, and the distinction between the fields of bankruptcy and equity. The most exhaustive and satisfactory of these attempts, in so far as they have come under our attention, is that of Judge Lowell in *In re Wilcox*, 94 Fed. Rep. 84.

*Ex parte Crowder*, 2 Vern. 706, presented a situation where a joint commission had issued against two persons, joint traders. Certain separate creditors asked that they might "be let in for their debts upon the respective separate estates of the bankrupts, under that joint-commission." Lord Chancellor Harcourt ordered them to be let in, and directed "that, as the joint or partnership estate was in the first place to be applied to pay the joint or partnership debts; so in like manner the separate estate should be in the first place to pay

all the separate debts: and as separate creditors are not to be let in upon the joint-estate, until all the joint-debts are first paid; so likewise the creditors to the partnership shall not come in for any deficiency of the joint-estate, upon the separate estate, until the separate debts are first paid." No reason was given for prescribing this method of division, except such as may be drawn from the quoted language. Judge Lowell, in his opinion in *In re Wilcox*, 94 Fed. Rep. 84, 87, observes, with a large measure of plausibility, that the Lord Chancellor did not suppose that he was laying down a new rule, and that it is probable that he was merely applying to the distribution of joint and separate estates under a single joint commission the rule which had formerly been applied when, at the same time, a joint estate was being administered under a joint commission and a separate estate under a separate commission.

However this may be, his rule was followed in succeeding cases for about seventy years, when Lord Thurlow, in *Ex parte Hodgson*, 2 Brown Ch. 5, where a separate commission had issued against one partner, ordered that the joint debts should share *pari passu* with the separate debts of the insolvent. He took the same course in two other cases which arose the following year, and that practice became, for a time, fixed. *Ex parte Page*, 2 Brown Ch. 119; *Ex parte Flintum*, 2 Brown Ch. 120. The retirement of Lord Thurlow was speedily followed by a return to the earlier rule, which has ever since expressed the settled policy in England, whether it has been prescribed by the courts, as it was prior to 1822, or formulated into bankruptcy statutes, as it has been subsequently. The extent of Lord Thurlow's innovation, as touching ultimate results, has been the subject of some discussion. *In re Wilcox*, 94 Fed. Rep. 84, 90, *et seq.* In view of the restoration to favor of the earlier rule, our chief present concern with it

grows out of an approving reference in terms to his doctrine in our Connecticut case of *Camp* v. *Grant*, 21 Conn. 41. In that connection his action, differing as it unmistakably did from that of his predecessors and successors, and generally understood as prescribing a rule governing the ultimate rights of the parties in the distribution of assets and not merely with bankruptcy procedure, possesses importance.

But while the rule that partnership creditors should have the prior right to partnership assets and the separate creditors to the separate assets of the partners has, since Lord Thurlow's time, remained one of general application in England, certain important exceptions were made to it. Eden, in his work on English Bankrupt Law [*172] (34 Law Library, Part 2, p. 140), gives three such exceptions. Under the first, a joint creditor who was a petitioning creditor under a separate commission was permitted to share with the separate creditors. The second allowed the joint creditors to share *pari passu* with the separate, where there was no joint estate and no solvent partner. The third permitted joint creditors to so share where there were no separate debts, or what amounted to the same thing, where the joint creditors undertook to pay them. See, to the same effect, *Ex parte Hodgson*, 2 Brown Ch. 5, note; *Ex parte Taitt*, 16 Ves. Jr. 194, note.

The second of these exceptions came to assume large importance, and has been the subject of much controversy as to its underlying reason and merits. Its recognition, however, was complete. The first suggestion of it apparently appears in *Ex parte Hayden* (1785), 1 Brown Ch. 454. About 1801, when Lord Eldon decided *Ex parte Pinkerton*, 6 Ves. Jr. 814, note, it had become so well established that he felt compelled to regard it as embodying the law, despite his inability to discover its reason. The first bankruptcy statute dealing with part-

nership subjects, enacted in 1822, and the more pertinent one which followed three years later, took no note of this exception. It was, nevertheless, judicially retained. Its importance is such that an intelligent expression of the rule requires its statement in connection with the major proposition. Disregarding other minor exceptions of no present pertinence, the English rule of distribution appears to be that for which the appellee. contends, to wit: that the firm creditors are not entitled to any payment out of the separate estates of the partners until their separate creditors shall have been satisfied, save where there is no joint estate or living solvent partner.

In this connection it is to be remembered, as in many discussions of the subject in this country it has not been, that by "solvent partner" was not meant one who had assets sufficient to pay his debts, but one who was not in bankruptcy so that his property was open to the joint creditors' appropriation by legal action and not subject to distribution in bankruptcy proceedings. "By the term *solvent partner*, must be understood a partner against whom there is no commission, . . . for . . . though a person be insolvent, he may yet be able to pay a considerable part of his debts, and therefore distinguishable from bankruptcy where the *whole* of the property is absorbed in the commission. The principle is, that while there is any fund, however small, to resort to, the joint creditors cannot prove against the separate estate of one of the partners, who has become bankrupt." *Ex parte Hodgson*, 2 Brown Ch. 5, note; *Ex parte Janson*, 3 Madd. 229, 231; *Everett* v. *Backhouse*, 10 Ves. Jr. 94, 98; *Ex parte Taitt*, 16 Ves. Jr. 193, note; *M'Culloh* v. *Dashiell*, 1 Har. & Gil. (Md.) 96, 105; Eden on Bankrupt Law [* 173] (34 Law Library, Part 2, p. 141); Lindley on Partnership (8th Ed.) 855, note *j*.

The consequences of the persistent attempt in Eng-

land to conform to the rule early adopted there, and yet avoid the accomplishment of manifest injustice to partnership creditors, are alike interesting and suggestive. The three exceptions stated by Eden are, it would appear, not all which it has been found necessary to recognize. Lord Lindley, in his recent work on Partnership (8th Ed.) p. 854, adds two more, to wit: One, "where the property of the firm has been fraudulently converted," and the other, "where there has been a distinct separate trade, in respect of which a separate debt has been contracted." This list of exceptions forms a striking commentary upon the soundness of the rule thus sought to be fortified by them. It would seem that if it were founded in sound reason it would not need to be so frequently restrained from a harsh operation when applied to concrete situations.

In this country the English rule, with its exception stated, has been accepted by the Federal Supreme Court and in about twenty State jurisdictions, either judicially or as the result of legislation. It was incorporated into the Federal Bankruptcy Acts of 1841 and 1867, and appears in the existing bankruptcy law. § 5. It is not, however, universally accepted. In quite a number of States it has been repudiated either judicially or by a combination of judicial construction and statutory enactment. *Bardwell* v. *Perry*, 19 Vt. 292, 297; *Hutzler Bros.* v. *Phillips*, 26 S. Car. 136, 150, 1 S. E. 502; *Pettyjohn* v. *Woodruff*, 86 Va. 478, 479, 10 S. E. 715; *Freeport Stone Co.* v. *Carey*, 42 W. Va. 276, 26 S. E. 183; *McLain* v. *Carson*, 4 Ark. 164, 166; *Northern Bank* v. *Keizer*, 63 Ky. (2 Duv.) 169, 170; *Johnson* v. *Gordon*, 102 Ga. 350, 359, 30 S. E. 507.

In all these States, save the last two, the rule is that for which the appellant contends. In these two jurisdictions another intermediate rule has been judicially adopted as one accomplishing the nearest approach to

equal and equitable results. It permits the separate creditors to appropriate so much of the separate estates of the partners as will give them a dividend equal in its percentage to that which the partnership creditors receive out of the joint estate, and then lets in both classes of creditors to share the separate assets *pari passu*.

The preponderance of authority in favor of the English rule thus shown, and its incorporation into federal bankruptcy legislation now in force, affecting as it does a matter of commercial concern, present a strong argument for its acceptance by us unless there are good reasons for contrary action to be found in its unsatisfactory character, or in the declared doctrine of this jurisdiction.

Referring to the cases to discover the reasons advanced in support of the English rule, we find a curious condition. In several jurisdictions it has simply been asserted to be the law. *Forbes* v. *Scannell*, 13 Cal. 242, 287; *Miller* v. *Clarke*, 37 Iowa, 325, 330. In a number of others it has, without discussion, been accepted as the rule supported by authority. *Crockett* v. *Crain*, 33 N. H. 542, 551; *Smith & Co.* v. *Mallory*, 24 Ala. 628, 636; *Ault* v. *Bradley*, 191 Mo. 709, 731, 90 S. W. 775; *Charles* v. *Eshleman*, 5 Colo. 107, 109; *Hawkins* v. *Mahoney*, 71 Minn. 155, 162, 73 N. W. 720. One of the earliest English cases justified it as a "resolution of convenience," and this justification has since been repeated. Quite a number of cases have seen no other grounds for its adoption. *Ex parte Cook*, 2 P. Wm. 500; *Bolton* v. *Butler*, 1 Bos. & Pull. 539, 547; *Bardwell* v. *Perry*, 19 Vt. 292, 301; *Morris* v. *Morris*, 45 Va. (4 Gratt.) 293, 334. See *Camp* v. *Grant*, 21 Conn. 41, 58. Whatever convenience may have been found in the application of it under once existing conditions, it is difficult to discover what advantages in that regard it

possesses over other modes of distribution under present conditions.

A considerable number of courts, however, have not been content with these reasons, and have sought for others more convincing. The futility of this search is well illustrated by the curious variety of propositions which have been advanced in support of the rule, and the failure of any one of them to command a general concurrence. What has appealed to one court as sufficient has been promptly repudiated by another as insufficient, and there is no consensus of view save in this, that all the reasons advanced center about the assumed or asserted equities of the situation. Each purports to find its justification in some inherent equity underlying the rule. In *Ex parte Elton*, 3 Ves. Jr. 238, 239, the Lord Chancellor refers to the separate estate of the partner as being "particularly attached to the separate creditors," and something of the same idea appears in other decisions. In *Tillinghast* v. *Champlin*, 4 R. I. 173, 190, for instance, it seems to be asserted that when the property passes into the hands of assignees in insolvency, or trustees in bankruptcy, an equitable lien at once attaches upon the joint property in favor of the joint creditors, and upon the separate property in favor of the separate creditors. Foundation for this proposition as applied to the separate property is hard to discover, except as it may embody an appeal to equitable principles adequate to justify equitable intervention to direct a distribution of the separate assets to the separate creditors in priority to partnership creditors. The existence of conditions justifying the recognition of such priority of treatment remains to be shown.

It has been suggested that the rule was an equitable one, since it was to be presumed that credit was extended upon the strength of it. *In re Wilcox*, 94 Fed. Rep. 84, 104. The significance of this suggestion is not

apparent save as addressed to a proposition to depart in some jurisdiction from the English rule once there declared. In some cases it is asserted that the equity underlying the rule arises from the presumption that partnership credit was extended upon the faith of the partnership assets and the individual credits upon the faith of the individual assets. *Davis* v. *Howell*, 33 N. J. Eq. 72, 76; *M'Culloh* v. *Dashiell*, 1 Har. & Gil. (Md.) 96, 105. The fundamental difficulty with this proposition is that its premise of fact is untrue, as has been repeatedly and unanswerably pointed out. *Camp* v. *Grant*, 21 Conn. 41, 59; *Rodgers* v. *Meranda*, 7 Ohio St. 179, 182; *In re Wilcox*, 94 Fed. Rep. 84, 103.

The principle of marshalling of assets has been occasionally invoked. As pertinent as that doctrine may be to the requirement that the joint creditors, having two funds to which they are entitled to look, and the separate creditors only one, the former should be compelled to exhaust the fund against which they alone can go before resorting to the other, it furnishes no justification for forbidding the partnership creditors with claims unsatisfied out of the joint funds to look to the separate funds until after the separate creditors have had their claims satisfied. Equity never wrought into the doctrine of marshalling of assets any principle fraught with any such unjust consequences. *In re Wilcox*, 94 Fed. Rep. 84, 104.

Another reason, not infrequently advanced, and on the whole, apparently, the favored one, is that its practical operation leads to more fair and equitable results than does that of any other. It is said that it is no more than right that the separate creditors should enjoy the prior right to look to the separate funds, since the partnership creditors have such right in respect to the joint fund. Most of the authorities urging this view have rested content with this simple and super-

ficially plausible, general statement. Occasionally a court has gone further and attempted to elaborate its position, and justify it by argument in a way to indicate a strong faith in its adequacy and completeness. *Rodgers* v. *Meranda*, 7 Ohio St. 179, furnishes a good example of such an attempt. The climax of its discussion is reached when, after commenting upon the prior right of the partnership creditors in and to the joint fund, and formulating its proposition as to the consequent inequity of then admitting them to participate in the division of the separate estates ratably with the creditors of the individual partners, the opinion, as if to clinch its argument and bring out into clear relief the impregnability of the proposition asserted, adds the following query (p. 184): "What equality and justice is there in allowing partnership creditors, who have been paid eighty per cent. on their debts, out of the joint fund, to come in *pari passu* with the individual creditors of one of the partners, whose separate property will not pay twenty per cent. to his separate creditors?" It apparently did not occur to the writer to supplement this question by another, as to what equality and justice there was in requiring a partnership creditor to rest content with a five per cent. dividend derived from the joint fund, while he saw the separate creditors of the partners, against whom he had as valid a claim in severalty as did the separate creditors, realize thirty per cent., or even ninety-nine per cent., out of the separate estate, which he was forbidden to touch.

The rule in favor of which this claim of equality and equity in results is made, is, it is to be remembered, one which compels the joint creditors to keep hands off of the separate funds until the separate creditors shall have had their claims fully satisfied out of them, if there are any joint distributable assets, however small,

and however meagre the dividend to the joint creditors the joint assets will permit. *M'Culloh* v. *Dashiell,* 1 Har. & Gil. (Md.) 96, 104; *Ex parte Peake,* 2 Rose, 54; Gilmore on Partnership, 440. It needs no argument to demonstrate that a rule which embodies such a provision is by no means well calculated to produce equality of results as between the different classes of creditors, and that whether equality or inequality will result in a given case will depend upon the conditions presented by the respective estates. In some cases doubtless a distribution of assets under the English rule will show a greater conformity in the amount of dividends received by the two classes respectively than would be the case under the application of that for which the appellant contends. In others quite the contrary will be true, as witness the present distribution as made by the Court of Probate. It will depend upon a matter of chance, however, as to what the event will disclose. If equality in distribution, as between the two classes, is the end to be obtained, surely the English rule is not comparable for an instant with that approved by the courts of Kentucky and Georgia. *Northern Bank* v. *Keizer,* 63 Ky. (2 Duv.) 169, 171; *Johnson* v. *Gordon,* 102 Ga. 350, 359, 30 S. E. 507.

The underlying trouble with these reasons for the rule, and with the rule itself, including its exception, is that they entirely ignore the fundamental principle defining the nature of partnership obligations and the rights of partnership creditors. They forget the different positions which partnership creditors and the separate creditors of a partner occupy. Prior to bankruptcy or insolvency proceedings the two classes do not stand upon an equality, and any attempt to bring them into an equality or proximate equality in the division of assets under such proceedings is one which can have no justification in the absence of some clear, equitable

demand that the partnership creditors should sur-
render the preferential position which they have oc-
cupied.

A creditor of a partnership can look to partnership
property to satisfy his claim, or he can, at his option,
enforce his judgment by direct levy upon the estate of
any partner with an entire disregard of the partnership
property. In equity his claim is a joint and several
one. A creditor of a partner has no claim upon part-
nership property. The most that he can under any cir-
cumstances reach is the interest of the partner, which
may be nothing at all if the firm liabilities so make it.
A rule of distribution of assets in insolvency which
overlooks these distinctions, whether heedlessly or in
the search for equality as between the two classes of
creditors, disregards an important factor in the situa-
tion. To our thinking the English rule either does this,
or fails in its logic. It is, of course, conceivable that
equitable considerations might call for a departure from
the conclusions logically drawn from fundamental legal
principles; but we are unable to discover such considera-
tions in the situations under review. We have hereto-
fore had occasion to express similar views, and to add the
pertinent suggestion that any inequality or advantage
which might result from the application of a rule which
would let in the joint creditors to share in the separate
estates was not one which grew out of an unequal ap-
plication of a rule of equity, but out of the nature of the
debt and property in question. *Camp* v. *Grant,* 21
Conn. 41, 62.

Upon the argument it was suggested that a reason for
the English rule might be found in the recognition of a
legal entity in a partnership. We fail to see how this
view of a partnership helps out in the way suggested.
The several liability of the partner is not thereby re-
moved, and, as long as it remains, the situation is not

relieved. Professor Brannan, an advocate of the legal entity theory, in the course of an article in the Harvard Law Review (Vol. 20, p. 594), in commenting upon the rights of joint creditors in the separate estates of the partners, well observes as follows: "It is true that the rule of marshalling would oblige the firm creditors first to exhaust the estate against which the separate creditors had no claim, but after the exhaustion of the firm estate the rule of marshalling would permit the firm creditors to come against the separate estates *pari passu* with the separate creditors." In speaking of the English rule in this connection, he says (p. 592): "It is believed that this rule is to be found in no other country, and it is to be regretted that Congress did not avail itself of the opportunity to enact a rule of distribution more scientific and more in accordance with the principle of partnership liability, whether the firm be regarded as an entity or not."

In view of these considerations, and of the mixed variety of unsatisfactory reasons presented in defense of the English rule, it is not strange that Lord Eldon, while accepting it, looked at it askance (*Gray* v. *Chiswell*, 9 Ves. Jr. 118; *Ex parte Kensington*, 14 Ves. Jr. 446), that some courts in adopting it have been free to confess their inability to discover a satisfactory basis for it, and that it has been repeatedly criticized and repudiated. Story on Partnership (6th Ed.) § 382; Shumaker on Partnership (2d Ed). 234.

We come now to a consideration of a case in our own jurisdiction, that of *Camp* v. *Grant*, 21 Conn. 41. The facts of that case were as follows: The estate of Zelotes C. Grant, deceased, was in settlement as an insolvent estate. He died a member of two firms. That of Z. C. and C. S. Grant was composed of himself and his brother. The brother survived Zelotes a short time and

then died insolvent. All the partnership assets had been appropriated through legal proceedings by a creditor of the firm, so that at the time of the final settlement of Zelotes' estate there were no firm assets and no living partner. The other partnership was composed of one Jerome and Zelotes. Jerome was living. There was no evidence as to his solvency or ownership of property; but manifestly his estate was not in insolvency. Whether or not the firm had assets is not, stated. There were partnership creditors of each firm, and individual creditors of Zelotes. The assets of his estate were insufficient to pay his individual creditors in full. The Court of Probate ordered them to be divided ratably among all the creditors, partnership and individual. This order was affirmed.

Counsel for the appellee naturally undertakes to minimize the scope of the decision thus made, and to bring the issue in the present case out from under its operation. He says, correctly, that the result reached, in so far as the partnership creditors of the firm of Z. C. & C. S. Grant were concerned, might have been arrived at by the application of the exception to the English rule. There was neither joint estate nor living solvent partner. That claim, however, cannot be made in respect to the admission of the creditors of the firm of Jerome and Grant to share in the distribution made. While there was no evidence as to Jerome's financial responsibility or whereabouts, the court expressly assumed, in favor of the then appellant, that Jerome was solvent and within the State, and decided the case upon that assumption. The opinion squarely faced the question before the court in its broadest aspects. It reviewed the history of the rule we have been considering, and discussed at length the reasons urged in its support, and the considerations militating against it. Its discussion covered the principal reasons now presented in

favor of the English rule, and they were all dismissed as being without merit. It observed, in confirmation of its conclusions reached, that the rule had received but little favor in this country, as at that time it had not, and finally concluded by expressing an adhesion to the doctrine of Lord Thurlow. The opinion leaves no room for misunderstanding as to what was meant by this reference to Lord Thurlow's doctrine, and that the court, by it, intended to declare its repudiation of the prevailing English rule, and to express its acceptance of that to which Lord Thurlow's name had become attached. The question directly in issue was, to be sure, one as to the rights of partnership creditors to be admitted to share in the assets of the insolvent estate of a dead partner. A decision of the narrow issue here was, however, necessarily involved in the one made affirming the distribution before the court. It is said that the opinion goes no further than upholding the right of presentation, leaving the right of participation in distribution undetermined. That contention is scarcely tenable when it is remembered that the judgment was one of affirmance of an order of payment which let in all the creditors ratably, whether partnership or individual. It is impossible to follow the argument of the opinion without coming to the conclusion, universally shared by courts and commentators, that the case is authority for the position for which the appellant contends.

The Superior Court is advised to render judgment dividing the distributable partnership assets ratably among the partnership creditors and the distributable assets belonging to the estate of each partner ratably among the separate creditors of such partner together with the partnership creditors, the several claims of the latter for such division to be reduced from the amounts allowed by the commissioners by the sums which will

be received thereon respectively in the distribution of the partnership assets.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.